304 F.3d 843
 Richard A. CANATELLA, Plaintiff-Appellant,
v.
STATE OF CALIFORNIA; Board of Governors of the State Bar of California; President of the State Bar Association; the Judges of the State Bar Court; the Office of the Chief Counsel of the State Bar of California, Trial Counsel, Defendants-Appellees.
 No. 00-16782.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 5, 2001.
 Filed June 12, 2002.
 Amended September 9, 2002.
 
 COPYRIGHT MATERIAL OMITTED Richard A. Canatella (argued), Cotter & Del Carlo, San Francisco, CA, plaintiff-appellant, Pro Se.
 Jay M. Goldman (argued), Dina E. Goldman (on the brief), Office of the General Counsel, The State Bar of California, and Tom Blake, Office of the Attorney General of the State of California, San Francisco, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California, Martin J. Jenkins, District Judge, Presiding. D.C. No. CV-00-01105-MJJ.
 Before HUG, D.W. NELSON and HAWKINS, Circuit Judges.
 
 ORDER
 
 1
 The Opinion filed on June 12, 2002, and appearing at slip op. 8487 [293 F.3d 1099] is amended as follows:
 
 
 2
 At slip op. page 8499 [293 F.3d at 1105-06], delete the first full paragraph (beginning "In reciting the factual background concerning the California State Bar disciplinary system....") through the end of section B at slip op. page 8501 [293 F.3d at 1107] (last sentence reads "Because this was the only action that had taken place at the time Canatella filed his federal complaint...."), and substitute the following in its place:
 
 
 3
 The major issue in Hirsh, in determining whether Younger abstention applied, was whether the plaintiffs faced on-going disciplinary proceedings when their suit was brought in federal court. The opinion noted that under California law attorney disciplinary matters were handled by the State Bar Court and "that throughout the process the State Supreme Court retains inherent jurisdiction over attorney disciplinary matters." Hirsh, 67 F.3d at 711-12. Hirsh also stated "Disciplinary proceedings are commenced by serving the accused with a Notice to Show Cause." Id. at 711. While the opinion does not cite a particular rule of court, it is apparent that the statement is based on the Transitional rules of the State Bar of California that governed the proceedings conducted by the State Bar Court, set forth in California Rules of Court, Revised Edition, page 1081, et seq. See Preamble, page 1085. Rule 550 provides, "Except as provided in Rule 551, a formal proceeding shall be commenced by issuance of a notice to show cause directed to the member." Id. at 1108. (Rule 551 did not pertain.) These were the rules applicable to the Hirsh plaintiffs.
 
 
 4
 The Rules were amended January 1, 1995, and were designated "Rules of Procedure of the State Bar of California." See California Rules of Court, 2002 Edition, page 769. These were the rules in effect at the times applicable to this case and govern the proceedings conducted by the State Bar through the State Bar Court. Id. at 773. Rule 50 of those Rules states: "The State Bar Court Proceeding is commenced by the filing of an initial pleading." Id. at 783. Rule 101(a) provides: "Unless otherwise specified in the rules governing a particular type of proceeding, a notice of disciplinary charges is the initial pleading in a disciplinary proceeding." Id. at 786. The "notice of disciplinary charges" in the current rules replaces the "notice to show cause" for the commencement of disciplinary proceedings that was applicable in Hirsh. A preliminary investigation before issuing a notice of disciplinary charges or a mere complaint to the bar does not commence a disciplinary action, nor would a mere report of sanctions by Canatella.9/ Thus, there was no on-going disciplinary proceeding to which Younger abstention would apply.10/
 
 
 5
 Replace all occurrences of the term "magistrate" with "magistrate judge."
 
 
 6
 . . . . .
 
 
 7
 9/ The district court relied on Jacobs v. State Bar of California, 20 Cal.3d 191, 141 Cal.Rptr. 812, 570 P.2d 1230 (1977), to conclude that Canatella's self-reporting of the sanctions order initiated a disciplinary proceeding. Jacobs was decided before the enactment of applicable California Court Rules governing disciplinary proceedings and is thus not applicable to this case.
 
 
 8
 10/ Given the absence of an ongoing proceeding, an "actual interference" inquiry under Green is no longer necessary.
 
 
 9
 With these amendments, the panel unanimously voted to deny the petition for rehearing. Judges Hug and Nelson recommended denying the petition for rehearing en banc and Judge Hawkins voted to deny the en banc petition.
 
 
 10
 The full court was advised of the petition for rehearing en banc and no active judge requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.
 
 
 11
 The petition for rehearing and the petition for rehearing en banc are DENIED.
 
 OPINION
 
 12
 MICHAEL DALY HAWKINS, Circuit Judge.
 
 
 13
 California attorney Richard A. Canatella ("Canatella") filed a 42 U.S.C. § 1983 suit against the California State Bar and others, raising First and Fourteenth Amendment challenges to four California State Bar statutes and one rule of professional conduct. The district court dismissed the claims under the Rooker-Feldman doctrine and on the basis of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), questioning further whether Canatella had standing and whether his claims were ripe for review. We must decide whether Rooker-Feldman applies to Canatella's claims in light of changed circumstances, and whether Canatella was involved in an ongoing proceeding under Younger. Because we conclude the answer to both questions is no, we must also decide whether Canatella's claims satisfy the jurisdictional requirements of Article III.
 
 I. BACKGROUND
 
 14
 Canatella has practiced law in California since 1972. He is licensed to practice in California and the District of Columbia, and is a member of the bars of the Northern and Central districts of California, the Ninth Circuit Court of Appeals, and the Supreme Court of the United States.
 
 
 15
 Prior to 1989, Canatella had no record of discipline before any court or bar. Between 1989 and 1996, federal and state courts imposed monetary sanctions against Canatella on twenty-six occasions, in an amount totaling approximately $100,000.[1] Canatella was sanctioned for such reasons as vexatious litigation, filing of frivolous actions and appeals, and the use of delay tactics. Twenty-five of the twenty-six sanctions arose in the context of two sets of proceedings.[2] In the first, Canatella filed a series of civil actions on behalf of a babysitter and her parents, after appellate reversal of the babysitter's conviction for second degree murder and child abuse. In the second, Canatella represented two civil defendants in a series of collection actions. All of the sanctions levied against Canatella concern his activities as an advocate of his clients' interests in judicial proceedings.
 
 
 16
 In 1992, the State Bar of California ("State Bar") initiated a disciplinary investigation into the multiple sanctions orders. In response, Canatella filed a § 1983 action seeking to enjoin the State Bar from taking disciplinary action against him, and to declare facially unconstitutional several provisions of the California Business and Professions Code and one provision of the California Rules of Professional Conduct.[3] While the sanctions orders themselves generally arose for violations of rules of court, such as Fed.R.Civ.Proc. 11(b), or Fed.R.App.Proc. 38, Canatella challenged the state bar statutes and professional rule under which he could ultimately be subject to discipline or disbarment by the State Bar. The district court abstained from exercising jurisdiction under Younger, and Canatella appealed to this court.
 
 
 17
 Pending appeal, the State Bar filed formal charges against Canatella. Canatella agreed to a stipulated settlement requiring 30 days actual suspension from legal practice, and an eighteen-month stayed suspension subject to reinstatement upon any finding of rule violations during an eighteen-month probationary period. The California Supreme Court approved the stipulated discipline on August 18, 1999, in a final disciplinary order. In light of the settlement, this court dismissed Canatella's appeal as moot on November 17, 1999. See Canatella v. State Bar of California, 203 F.3d 830 (9th Cir.1999). The district court subsequently denied without prejudice Canatella's motions for vacatur of the abstention order, and for leave to amend his complaint.
 
 
 18
 In March of 2000, Canatella filed a second § 1983 suit in district court, again seeking an injunction prohibiting the State Bar from taking further disciplinary action against him under the challenged provisions, and a declaration that the provisions are unconstitutional. Canatella alleged that facially and as applied, the challenged provisions are unconstitutionally vague and overbroad, in violation of the First and Fourteenth Amendments. Canatella also alleged that the provisions deprive him of his "judicial proceedings" privilege under color of state law. In raising these claims, Canatella alleged a strong likelihood of further State Bar disciplinary charges for a sanction entered against him by a magistrate judge on January 14, 2000, in a separate action.[4]
 
 
 19
 The district court dismissed Canatella's complaint under the Rooker-Feldman doctrine and on Younger abstention grounds, further questioning whether Canatella had standing and whether his claims were ripe for review. Canatella now appeals.
 
 
 20
 Two events of significance have occurred after Canatella filed the immediate appeal. First, this court vacated the magistrate judge's sanction order on January 25, 2001, with the mandate issuing on February 20, 2001. See Chan v. Bay Area Air Quality Management Dist., 2 Fed.Appx. 861, 867 (9th Cir.2001). Second, on March 18, 2001, Canatella completed his probationary sentence under the stipulated settlement and final order issued by the Supreme Court of California in the original State Bar proceedings.
 
 II. ANALYSIS
 A.
 
 21
 The district court held that it lacked jurisdiction over Canatella's § 1983 claims under the Rooker-Feldman doctrine, which derives from Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The Rooker-Feldman doctrine is jurisdictional, see Olson Farms, Inc. v. Barbosa, 134 F.3d 933, 937 (9th Cir.1998), and subject to de novo review. See Garvey v. Roberts, 203 F.3d 580, 587 (9th Cir.2000). Feldman holds that 28 U.S.C. § 1257 prevents federal courts from asserting jurisdiction over final "judicial" determinations by state supreme courts.[5] Id. at 476, 103 S.Ct. 1303.
 
 
 22
 The district court determined that Canatella's § 1983 suit was, in effect, an action to review the California Supreme Court's final disciplinary order approving the settlement between Canatella and the State Bar. The court reasoned that because Canatella was still on probation, a grant of his requested injunctive and declaratory relief would effectively nullify the California Supreme Court's approval of Canatella's probationary status. The court was rightly concerned that asserting jurisdiction might require review of a final state court decision, particularly one potentially subject to revision in the state court system, cf. Richardson v. District of Columbia Court of Appeals, 83 F.3d 1513, 1515 (D.C.Cir. 1996), but this situation no longer obtains. On March 18, 2001, Canatella completed his probationary sentence under the stipulated discipline approved by the Supreme Court of California. He has done so without incurring further disciplinary sanction. Review of his First and Fourteenth Amendment claims no longer raises the specter of review of a final state court decision, and the question of whether Rooker-Feldman applies is moot.[6]
 
 B.
 
 23
 The district court also abstained from jurisdiction on the basis of Younger v. Harris. This court reviews de novo whether abstention is required. Green v. City of Tucson, 255 F.3d 1086 (9th Cir. 2001) (en banc). Younger and its progeny teach that federal courts may not, where circumstances dictate, exercise jurisdiction when doing so would interfere with state judicial proceedings. See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). A district court must abstain and dismiss a suit on the basis of Younger where: (1) state proceedings are ongoing; (2) important state interests are involved; and (3) the plaintiff has an adequate opportunity to litigate federal claims in the state proceedings. See id. at 432, 102 S.Ct. 2515. However, we recently held that the Middlesex inquiry is triggered "only when the threshold condition for Younger abstention is present—that is, when the relief sought in federal court would in some manner directly `interfere' with ongoing state proceedings." Green v. City of Tucson, 255 F.3d at 1097.
 
 
 24
 Of course the Green interference inquiry presumes the existence of an ongoing state proceeding to be interfered with, which is precisely what the first prong of the Middlesex test requires the district court to consider.[7] We consider whether the state court proceedings were ongoing as of the time the federal action was filed. See Beltran v. State of California, 871 F.2d 777, 782 (9th Cir.1988).
 
 
 25
 At the time Canatella filed his federal complaint, the magistrate judge's sanctions order had issued. We must decide whether Canatella's act of reporting to the State Bar the sanctions order, as required under the terms of his stipulation, gave rise to ongoing judicial proceedings for Younger purposes.[8] California law guides the inquiry. See Middlesex, 457 U.S. at 433, 102 S.Ct. 2515; Hirsh v. Justices of Supreme Court of California, 67 F.3d 708, 711 (9th Cir.1995). Brotsky v. State Bar of California, 57 Cal.2d 287, 301, 19 Cal.Rptr. 153, 368 P.2d 697 (1962), indicates that, as a general matter, State Bar actions during disciplinary proceedings are judicial in nature. See also Hirsh, 67 F.3d at 711. However, no affirmative action had been taken by the State Bar against Canatella at the initiation of the federal suit. In fact, Canatella successfully secured an order from the magistrate judge staying any State Bar disciplinary proceedings pending the outcome of Canatella's direct appeal of the sanctions order to this court. The only procedural step that had occurred at the time the complaint was filed was Canatella's act of self-reporting.
 
 
 26
 Relying on our decision in Hirsh, Canatella argues that California disciplinary proceedings commence only when the State Bar serves the accused attorney with a "notice of disciplinary charges" or a "Notice to Show Cause." Hirsh presented issues similar but not identical to those raised here. Facing pending attorney disciplinary proceedings by the California State Bar, two lawyers filed a § 1983 action in federal court alleging various constitutional deprivations. Id. at 712. The plaintiffs sought an injunction to stop the disciplinary proceedings, a declaratory judgment that the state bar disciplinary system was unconstitutional, and monetary damages. Id. The district court abstained from jurisdiction and dismissed the suit under Younger, and we affirmed.
 
 
 27
 The major issue in Hirsh, in determining whether Younger abstention applied, was whether the plaintiffs faced on-going disciplinary proceedings when their suit was brought in federal court. The opinion noted that under California law attorney disciplinary matters were handled by the State Bar Court and "that throughout the process the State Supreme Court retains inherent jurisdiction over attorney disciplinary matters." Hirsh, 67 F.3d at 711-12. Hirsh also stated "Disciplinary proceedings are commenced by serving the accused with a Notice to Show Cause." Id. at 711. While the opinion does not cite a particular rule of court, it is apparent that the statement is based on the Transitional rules of the State Bar of California that governed the proceedings conducted by the State Bar Court, set forth in California Rules of Court, Revised Edition, page 1081, et seq. See Preamble, page 1085. Rule 550 provides, "Except as provided in Rule 551, a formal proceeding shall be commenced by issuance of a notice to show cause directed to the member." Id. at 1108. (Rule 551 did not pertain.) These were the rules applicable to the Hirsh plaintiffs.
 
 
 28
 The Rules were amended January 1, 1995, and were designated "Rules of Procedure of the State Bar of California." See California Rules of Court, 2002 Edition, page 769. These were the rules in effect at the times applicable to this case and govern the proceedings conducted by the State Bar through the State Bar Court. Id. at 773. Rule 50 of those Rules states: "The State Bar Court Proceeding is commenced by the filing of an initial pleading." Id. at 783. Rule 101(a) provides: "Unless otherwise specified in the rules governing a particular type of proceeding, a notice of disciplinary charges is the initial pleading in a disciplinary proceeding." Id. at 786. The "notice of disciplinary charges" in the current rules replaces the "notice to show cause" for the commencement of disciplinary proceedings that was applicable in Hirsh. A preliminary investigation before issuing a notice of disciplinary charges or a mere complaint to the bar does not commence a disciplinary action, nor would a mere report of sanctions by Canatella.[9] Thus, there was no on-going disciplinary proceeding to which Younger abstention would apply.[10]
 
 C.
 
 29
 Because neither the Rooker-Feldman doctrine nor Younger require that the district court abstain from jurisdiction, we must also consider whether the district court erroneously concluded that Canatella lacks standing to bring his claims, and that his claims are not ripe for review.
 
 
 30
 The district court's decision to grant or deny standing is reviewed de novo. Loyd v. Paine Webber, 208 F.3d 755, 758 (9th Cir.2000). Standing is one of the cluster of prudential doctrines mediating the Article III requirement that federal courts take jurisdiction only over "definite and concrete, not hypothetical or abstract" cases and controversies. Thomas v. Anchorage Equal Rights Commission, 220 F.3d 1134, 1139 (9th Cir.2000) (en banc). A plaintiff generally demonstrates standing by showing an injury in fact traceable to the challenged action and redressable by a favorable decision. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). In the particular context of injunctive and declaratory relief, a plaintiff must show that he has suffered or is threatened with a "concrete and particularized" legal harm, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), coupled with "a sufficient likelihood that he will again be wronged in a similar way." City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). See also Berner v. Delahanty, 129 F.3d 20, 24 (1st Cir.1997). And while the plaintiff must show that the feared harm is "actual or imminent, not conjectural or hypothetical," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), "[o]ne does not have to await the consummation of threatened injury" before challenging a statute. Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).
 
 
 31
 The district court concluded that Canatella had no standing because he could show no imminent threat of injury based on the magistrate judge's sanctions order. Nor did the district court accept the contention that Canatella suffered harm by the threat of sanctions in the future. However, we are not so quick to render Canatella a "hapless plaintiff between the Scylla of intentionally flouting ... [the] law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a [disciplinary] proceeding." American-Arab Anti-Discrimination Committee v. Thornburgh, 970 F.2d 501, 508 (9th Cir.1992) (quoting Steffel v. Thompson, 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)); Babbitt, 442 U.S. at 298, 99 S.Ct. 2301. Canatella personally faced discipline under the challenged provisions. He stipulated to a probationary sentence that allowed him to retain his license and continue practice after a 30 day actual suspension. He has nowhere conceded that he will refrain from the type of expression that he believes is constitutionally protected, is necessary to the performance of his duties as an advocate, and is the basis upon which he may be disciplined under the challenged statutes in the future. Nor has the State Bar conceded that it will not rely on the challenged provisions to bring disciplinary proceedings against Canatella should he be sanctioned again.
 
 
 32
 On the record before us, we believe not only that "[t]he parties remain philosophically on a collision course," Berner, 129 F.3d at 24, but that there is a strong likelihood Canatella may again face discipline under the challenged provisions. His threat of future prosecution is not merely hypothetical and conjectural, but actual. In relying on Canatella's disciplinary record to reach our conclusion, we do not maintain that past "prosecution" by itself gives rise to a present case or controversy. But we have no reason to doubt that Canatella's interactions with the State Bar heretofore do not have at least some "continuing, present adverse effects," Lyons, 461 U.S. at 102, 103 S.Ct. 1660, whether these effects be further discipline, or the chilling of what may be constitutionally protected speech.[11] Because the equitable relief he seeks would alleviate the harm he has alleged, Canatella demonstrates standing and his claims should be allowed to proceed.
 
 
 33
 Moreover, in recognition that "the First Amendment needs breathing space," the Supreme Court has relaxed the prudential requirements of standing in the First Amendment context. See Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Secretary of State of Md. v. Joseph H. Munson Co., 467 U.S. 947-956, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Where, as here, a plaintiff raises an overbreadth challenge to a statute under the First Amendment, standing arises "not because [the plaintiff's] own rights of free expression are violated, but because of a judicial prediction or assumption that the [challenged statute's] very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick, 413 U.S. at 612, 93 S.Ct. 2908.[12]
 
 
 34
 Here, the district court did not take Broadrick and its progeny into account in addressing standing, and its analysis fails to recognize that Canatella challenged the statutes both facially and as applied. We cannot selectively read the facial overbreadth claim out of Canatella's complaint, and on that basis, reduce the scope of Canatella's alleged harms for purposes of standing analysis. See American Civil Liberties Union v. Florida Bar, 999 F.2d 1486, 1495 (11th Cir.1993); Stretton v. Disciplinary Bd. of Supreme Court of Pennsylvania, 944 F.2d 137, 140 (3d Cir.1991).[13] Canatella claims that the vagueness and overbreadth of the statutes result in censorship of protected speech by all California attorneys who push the envelope of zealous advocacy. Canatella does not allege that he suffers injury only if he is again sanctioned by a court, and investigated, and disciplined (or disbarred) by the State Bar; nor must he do so to demonstrate standing for an overbreadth claim. It is enough that Canatella shows that he and others in his position face a credible threat of discipline under the challenged statutes, and may consequently forego their expressive rights under the First Amendment. Nor have we reason to doubt that other California attorneys find themselves in Canatella's dilemma. The alleged source of the harms that Canatella and others like him may face is the arguably vague and overbroad language of the challenged provisions under which California lawyers perform their jobs and are subject to discipline. He seeks an injunction preventing enforcement of the challenged provisions, and a declaration that they are unconstitutional. He alleges concrete and particularized harms to his First Amendment rights and demonstrates a sufficient likelihood that he and others may face similar harm in the future. Under the rubric of Broadrick, this is enough to satisfy the prudential requirements of standing for a First Amendment overbreadth claim.[14]
 
 D.
 
 35
 In dismissing Canatella's claim, the district court concluded that ripeness also presented an obstacle to Canatella's action. Ripeness is a question of law reviewed de novo. Stuhlbarg Intern. Sales Co. v. John D. Brush & Co. 240 F.3d 832, 839 (9th Cir.2001). As is often the case, we are confronted with a situation where "sorting out where standing ends and ripeness begins is not an easy task." See Thomas, 220 F.3d at 1138-39. See also Erwin Chemerinsky, A Unified Approach to Justiciability, 22 Conn. L.Rev. 677, 681 (1990). A ripeness inquiry considers whether "concrete legal issues, presented in actual cases, not abstractions," are raised by the complaint. United Public Workers v. Mitchell, 330 U.S. 75, 77, 67 S.Ct. 556, 91 L.Ed. 754 (1947), but "like other justiciability issues, ripeness is `not a legal concept with a fixed content or susceptible of scientific verification.'" American-Arab Anti-Discrimination Committee, 970 F.2d at 510 (quoting Poe v. Ullman, 367 U.S. 497, 508, 81 S.Ct. 1752, 6 L.Ed.2d 989, (1961)). The ambiguities of the doctrine notwithstanding, we determine the ripeness of a claim by asking whether the issues are fit for judicial decision and whether the parties will suffer hardship if we decline to consider the issues. American-Arab Anti-Discrimination Committee, 970 F.2d at 510.
 
 
 36
 "To establish `a dispute susceptible to resolution by a federal court,' plaintiffs must allege that they have been `threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'" Culinary Workers Union, Local 226 v. Del Papa, 200 F.3d 614, 617 (9th Cir.1999) (quoting Babbitt, 442 U.S. at 298-99, 99 S.Ct. 2301). While Canatella is not currently involved in disciplinary proceedings, it cannot be said that Canatella's fear of facing future disciplinary proceedings is "imaginative and wholly speculative." Babbitt 442 U.S. at 289, 99 S.Ct. 2301. Additionally, Canatella alleges harm not only in the form of potential disciplinary measures under the challenged statutes, but in the ongoing harm to the expressive rights of California attorneys to the extent they refrain from what he believes to be constitutionally protected activity. We also believe that Canatella's claims do not arise in a factual vacuum and are sufficiently framed to render them fit for judicial decision.
 
 
 37
 We also conclude Canatella and others in his position will be harmed absent a consideration of his claims. We do not believe the challenge should be considered ripe only upon the initiation of disciplinary proceedings.[15] If, instead, we were to conclude that Canatella's claims are ripe only when based only on concluded disciplinary proceedings, Canatella would arguably be barred on a theory of mootness, or on the basis of Rooker-Feldman. "Ripeness is particularly a question of timing," Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Board of Oil & Gas Conservation, 792 F.2d 782, 788 (9th Cir. 1986), and there is no better time to entertain Canatella's claims than now.[16]
 
 CONCLUSION
 
 38
 Because Canatella has completed the probationary sentence to which he stipulated, we conclude that the Rooker-Feldman doctrine no longer prevents the exercise of jurisdiction over his claim. We also conclude that the mere self-reporting of a sanction to the State Bar does not give rise to an ongoing judicial proceeding, and that the court's abstention on the basis of Younger was error. We also conclude that Canatella satisfies the prudential requirements of standing under the analysis appropriate in the First Amendment context, and that Canatella's claims are ripe for review.
 
 
 39
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Canatella filed for bankruptcy in 1997, alleging in his complaint that he was forced to do so "as a result of the devastating economic impact of the sanctions." He tendered approximately $100,000 in compliance with the sanctions orders
 
 
 [2]
 The sanctions arose in a collection action filed against Canatella himself for fees owed to a court reporter
 
 
 [3]
 The challenged provisions state that:
 (1) "It is the duty of an attorney ... to counsel or maintain such actions, proceedings or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense." Cal. Bus. & Prof.Code § 6068(c);
 (2) "It is the duty of an attorney ... not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest." Cal. Bus. & Prof.Code § 6068(g);
 (3) "A willful disobedience or violation of an order of the court requiring him to do an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitutes cause for disbarment or suspension." Cal. Bus. & Prof.Code § 6103;
 (4) "The commission of any act involving moral turpitude, dishonesty, or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor, constitutes a cause for disbarment and suspension." Cal. Bus. & Prof.Code § 6106;
 (5) "A member shall not seek, accept, or continue employment if the member knows or should know that the objective of such employment is: (A) To bring an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person; or (B) To present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by a good faith argument for an extension, modification, or reversal of such existing law ..." Cal. R. of Prof. Conduct 3-200.
 
 
 [4]
 At the time Canatella filed his § 1983 claim below, no state court or State Bar disciplinary proceedings were pending against him. Canatella had reported the magistrate judge's sanctions order to the State Bar, but had also appealed the order to this court in a separate action. The magistrate judge stayed the order pending resolution of Canatella's direct appeal of the sanction, which was ultimately vacated by this court
 
 
 [5]
 More precisely,Feldman read § 1257 to prohibit federal district court review of a final determination by the District of Columbia Court of Appeals, the highest appellate court in the District of Columbia judicial system. The logic of the decision has been applied to limit district court jurisdiction over decisions of state supreme courts as well. See, e.g., Craig v. State Bar of Cal., 141 F.3d 1353, 1354 (9th Cir.1998).
 
 
 [6]
 We note that even if Canatella were still under the probationary period,Rooker-Feldman would likely not bar Canatella's claims. His complaint does not request review of the stayed suspension to which he stipulated with the State Bar, and seeks only prospective relief. Nor does the complaint request review of the probationary sentence. Finally, the stipulation document between Canatella and the State Bar does not on its face specify the particular provisions under which the State Bar would have ultimately sought discipline. Prospective injunctive and declaratory relief in the current action thus does not appear to require review by the district court of the final California Supreme Court order approving Canatella's discipline. We also do not read Canatella's complaint to be a "skillful attempt to mask the true purpose of the action, which essentially is to reverse the decision of the Supreme Court of [California]." Stern v. Nix, 840 F.2d 208, 212 (3d Cir.1988). We therefore do not believe that Canatella's federal claim would have been "inextricably intertwined" with the state proceedings, as is required for dismissal on the basis of Rooker-Feldman. See Feldman, 460 U.S. at 482 n. 16, 103 S.Ct. 1303.
 
 
 [7]
 Canatella disputes only the first prong of theMiddlesex test. This court has held that state attorney disciplinary proceedings strongly implicate important state interests, and that under California law, federal constitutional defenses, like Canatella's First Amendment challenge, may be raised through judicial review of State Bar Court decisions. See Hirsh v. Justices of Supreme Court of California, 67 F.3d 708, 711, 713 (9th Cir.1995). The second and third Middlesex prongs are therefore not at issue here.
 
 
 [8]
 The district court held and the parties do not dispute that the California Supreme Court's Final Order approving Canatella's stipulated discipline was not an "ongoing" state proceeding. Because the nature or amount of Canatella's stipulated discipline was not the subject of an ongoing proceeding, and was not subject to alteration in the California state court system, we agree
 
 
 [9]
 The district court relied onJacobs v. State Bar of California, 20 Cal.3d 191, 141 Cal. Rptr. 812, 570 P.2d 1230 (1977), to conclude that Canatella's self-reporting of the sanctions order initiated a disciplinary proceeding. Jacobs was decided before the enactment of applicable California Court Rules governing disciplinary proceedings and is thus not applicable to this case.
 
 
 [10]
 Given the absence of an ongoing proceeding, an "actual interference" inquiry underGreen is no longer necessary.
 
 
 [11]
 In performing our relaxed standing analysis, we need not consider the precise relationship between Canatella and those he argues are in his positionSee Eisenstadt v. Baird, 405 U.S. 438, 445 n. 5, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) ("Indeed, in our First Amendment cases we have relaxed our rules of standing without regard to the relationship between the litigant and those whose rights he seeks to assert precisely because application of those rules would have an intolerable, inhibitory effect on freedom of speech.").
 
 
 [12]
 TheBroadrick rule applies only to statutes that regulate speech. See Broadrick, 413 U.S. at 612, 93 S.Ct. 2908; Wurtz v. Risley, 719 F.2d 1438, 1440 (9th Cir.1983). Here, Canatella challenges rules "directed narrowly and specifically at expression or conduct commonly associated with expression," id. at 305; City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 760, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), and a relaxed standing inquiry is proper.
 
 
 [13]
 InRoulette v. City of Seattle, 97 F.3d 300 (9th Cir.1996), we considered whether a federal court had jurisdiction to hear a facial First Amendment challenge to a Seattle ordinance prohibiting sitting or lying on sidewalks, observing:
 "It's true that our ordinary reluctance to entertain facial challenges is somewhat diminished in the First Amendment context. However, this is because of our concern that those who desire to engage in legally protected expression ... may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.... When we allow such challenges, we mostly say we're protecting the free speech interests of `parties not before the Court.'" Id. at 303 (citation omitted).
 
 
 [14]
 In so holding, we do not imply that the mere existence of the challenged provisions gives rise to an injury sufficient for standing purposes. Instead, it is Canatella's history with the California Bar, his continuing activities as a zealous advocate, and the nature of his challenge to the provisions that lead us to conclude the requirements of standing are met in his complaint
 
 
 [15]
 InVirginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), the Supreme Court allowed a pre-enforcement challenge to proceed against Virginia's newly amended obscenity law. In considering whether the dispute presented an actual case or controversy, the Court wrote: "We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure one of self-censorship; a harm that can be realized without an actual prosecution." Id. at 393, 108 S.Ct. 636.
 
 
 [16]
 Because we conclude that Canatella's complaint should not have been dismissed on any of the foregoing grounds, we do not reach the question of whether the district court abused its discretion in denying him leave to amend his complaint. Nor do we express any view as to the merits of Canatella's claims, the questions before us being strictly jurisdictional