**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

M&A GABAEE, a California
Limited Partnership,
            *Plaintiff-Appellant,*

            v.

THE COMMUNITY REDEVELOPMENT
AGENCY OF THE CITY OF LOS
ANGELES, a public agency; CITY OF
LOS ANGELES, a municipal
corporation,
            *Defendants-Appellees.*

Nos. 04-56134
        04-56740*

D.C. Nos.
CV-04-02798-SVW
CV-04-05424-SVW

OPINION

Appeals from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
May 5, 2005—Pasadena, California

Filed August 17, 2005

Before: Diarmuid F. O'Scannlain and Johnnie B. Rawlinson,
Circuit Judges, and Robert H. Whaley,** District Judge.

Opinion by Judge O'Scannlain

---

*These two appeals are consolidated for resolution in this opinion.

**The Honorable Robert H. Whaley, United States District Judge for
the Eastern District of Washington, sitting by designation.

---

**COUNSEL**

Bruce Tepper, Los Angeles, California, argued the cause for the appellant; Fernando Villa and Amy B. Alderfer, Greenberg Traurig, LLP, Santa Monica, California, were on the brief.

JoAnn Victor, Jackson & Assoc., Los Angeles, California, argued the cause for the appellees; David S. Cunningham III, Jackson & Assoc., and Mary K. Dennis, Office of the City Attorney of Los Angeles, California, were on the brief.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether *Younger* abstention is called for when a parallel state-court proceeding has formally begun but not yet reached proceedings of substance on the merits of the case.

I

M&A Gabaee ("M&A"), a California limited partnership formed by real estate developers, holds possession of two pieces of property in Los Angeles, one at 1040 E. Slauson Ave. and one at 944-1010 E. Slauson Ave. (the "1040 E. Slauson property" and "1010 E. Slauson property" respectively).[1] Since acquiring these properties, M&A has sought

---

[1]M&A owns the property at 1040 E. Slauson Ave. outright and holds a lease on the property at 944-1010 E. Slauson Ave. through the year 2028 with an option to purchase.

permission from the Community Redevelopment Agency of the City of Los Angeles (the "CRA") to develop the properties into a shopping complex.

The CRA, however, awarded the development project to another developer, Slauson Central. In December 2003, CRA entered into a development agreement with Slauson Central and served M&A with a Notice of Intent to Acquire both properties. The subsequent condemnation process proceeded on different schedules for the two properties, and because the parties' arguments depend heavily on the timing of the various events in this dispute, we describe them separately.

On March 4, 2004, the CRA Board of Commissioners adopted a Resolution of Necessity authorizing the CRA to acquire the 1040 E. Slauson property by eminent domain. On March 17, the CRA filed an eminent domain action in California Superior Court (the "1040 eminent domain action"). On April 22, M&A filed an action in federal district court seeking to enjoin the CRA from acquiring the 1040 E. Slauson property through eminent domain. The CRA moved to dismiss the suit based on *Younger* abstention. The district court granted the motion in June 2004, and M&A timely appealed.

On July 14, 2004, M&A filed a separate action in federal court seeking to enjoin the CRA from acquiring the 1010 E. Slauson property through eminent domain. The following day, the CRA Board adopted a Resolution of Necessity authorizing the CRA to do just that. That same day, the CRA filed an eminent domain action against the 1010 E. Slauson property in California Superior Court (the "1010 eminent domain action"). The CRA moved to dismiss M&A's second federal lawsuit, again on the basis of *Younger* abstention, and in September 2004 the district court granted the motion. Again, M&A timely appealed.

Because the issues are so similar, we resolve both appeals in this opinion.

II

The parties' dispute centers on whether the CRA's use of the eminent domain power was aimed at a valid "public use," U.S. Const., amend. V; *see Kelo v. City of New London*, 125 S. Ct. 2655, 2662 (June 23, 2005), but this question is not before us. Rather, we must decide whether the doctrine of *Younger* abstention required the district court to dismiss M&A's two federal lawsuits because of the eminent domain proceedings taking place in California state court.

[1] A federal court must abstain to avoid interference in a state-court civil action when three tests are met. First, the proceedings must implicate important state interests; second, there must be ongoing state proceedings; and third, the federal plaintiff must be able to litigate its federal claims in the state proceedings. *See Am. Consumer Pub. Ass'n, Inc. v. Margosian*, 349 F.3d 1122, 1126 (9th Cir. 2003); *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 433 (1982). The first and third prong are clearly met,[2] and M&A challenges only the second, arguing that there were no ongoing state proceedings at the relevant times. We must consider its argument separately for each of the two proceedings.

A

CRA filed the 1040 eminent domain action in California

---

[2]As to the first prong, states clearly have an interest in the exercise of their own eminent-domain power. *See Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 244 (1984). As to the third prong, M&A will have an opportunity to litigate its constitutional claims in state court. California law permits M&A to challenge the taking based not only on California state standards, but also on "[a]ny other ground provided by law." Cal. Civ. P. Code § 1250.360(h). Since M&A has pointed out no procedural bar to its ability to raise its constitutional claims in California court, this prong of the test is also satisfied. *See Dubinka v. Judges of Superior Court*, 23 F.3d 218, 224 (9th Cir. 1994); *Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017, 1020 (9th Cir. 1999).

Superior Court on March 17, 2004. M&A did not file its federal suit until more than a month later, on April 22, 2004. M&A nevertheless argues that the state action was not "ongoing," because no "proceedings of substance on the merits" had yet occurred in the state action.

[2] M&A's argument is based on an analogy to the Supreme Court's holding in *Hicks v. Miranda*, 422 U.S. 332 (1975), where the Court held that "where state . . . proceedings are begun . . . after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."[3] *Id.* at 349. *Hicks* teaches that it is not the filing date of the federal action that matters, but the date when substantive proceedings begin. M&A's argument is that the same should be true of the state action. It argues that the existence of a merely "embryonic" state action—one in which no substantive proceedings have taken place—does not require a federal court to engage in *Younger* abstention.

M&A's argument, however, has no support in the decisions of the Supreme Court or this circuit. In fact, it contradicts the whole purpose and tenor of the Supreme Court's holdings in *Younger* and *Hicks*.

[3] The principle behind the Supreme Court's initial invocation of the abstention doctrine in *Younger* was its conviction that "[s]ince the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." 401 U.S. at 43. Under the system the Court called "Our Federalism," it explained, "the National Govern-

---

[3]*Hicks* dealt with state-court criminal proceedings. There is no dispute, however, that *Younger* principles also apply to civil proceedings implicating important state interests. In *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229 (1984), the Supreme Court applied *Hicks* to civil proceedings involving a state land reorganization plan.

ment, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44. Thus, the Court concluded, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* at 45. In short, the driving principle behind *Younger* was that in matters of special concern to the states, federal courts should avoid depriving the state courts of the opportunity to adjudicate constitutional issues. *Hicks* reaffirmed and extended this principle, holding that because "[t]he rule in Younger v. Harris is designed to permit state courts to try state cases free from interference by federal courts," federal courts must defer even to state court proceedings that are filed *after* the federal action. 422 U.S. at 349 (internal quotation marks omitted).

[4] The principle of deference to state courts would be subverted by M&A's suggestion that federal courts should ignore pending state-court proceedings, and proceed to adjudicate matters of state concern themselves, so long as the state proceedings have not yet reached the substance of the dispute. Under the logic of *Younger* and *Hicks*, it makes no difference what stage the state-court proceedings are at: what matters is that the existence of a pending state-court action unmistakably signals the state's willingness and readiness to adjudicate the dispute.

[5] Nor does M&A's argument find support in the language of the Supreme Court's own application of its *Younger* jurisprudence. In *Hicks*, for instance, the Court held abstention to be appropriate "where state . . . proceedings are *begun* against the federal plaintiffs." 422 U.S. at 349 (emphasis added). It is self-evident that, absent some unusual use of language, a lawsuit begins when it is filed. *See Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000, 1001 (9th Cir. 1995) ("Because no action *has been filed* in state court against defendants, there are no ongoing state judicial proceedings to which this court

can defer" (emphasis added)); *cf. EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1505 n.4 (9th Cir. 1990) (citing cases holding that a statutory reference to the "commencement" of a lawsuit refers to the time of filing). In *Hawaii Housing Authority*, the Court used similar language: "*Younger* abstention is required . . . when state court proceedings are *initiated* before any proceedings of substance on the merits have taken place in the federal court." 467 U.S. at 238 (emphasis added) (internal quotation marks omitted). Again, a state proceeding is surely "initiated" no later than when it is filed (or, at the latest, when the defendant is served). Even more tellingly, the Court wrote:

> Under Younger-abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been *or could be* presented in ongoing state judicial proceedings that concern important state interests.

*Id.* at 237-38 (emphasis added). By indicating that *Younger* abstention is appropriate even when federal claims have not yet been presented in state court *but could be*, this language makes M&A's argument untenable.

As support for its argument, M&A relies heavily on language from an Eighth Circuit case, *Aaron v. Target Corp.*, 357 F.3d 768 (8th Cir. 2004), in which the court reversed a district court's refusal to abstain and wrote that the district court had "erred by concentrating on filing dates rather than by examining all the facts and context of the two actions." *Id.* at 777. The court also wrote that "a court should examine what was actually taking place in both settings" and that "[w]hether proceedings of substance have taken place *in either court* is a key factor." *Id.* at 775 (emphasis added).

Taken at face value, this language could support M&A's argument by suggesting that a district court must consider

whether proceedings of substance have taken place in *state* court as well as in federal court. We doubt, however, that the cited passage of *Aaron* was intended to be read as M&A would read it; in any event, we reject it insofar as it implies that the propriety of *Younger* abstention depends on whether the parallel state-court proceeding has yet reached the substance of the dispute.

The facts of *Aaron* are somewhat similar to those now before us: it was a federal lawsuit seeking to enjoin state-court condemnation proceedings against the plaintiffs' property. *Id.* at 770. The plaintiffs had filed the federal suit and moved for a preliminary injunction before the state court action commenced. *Id.* at 772. The district court refused to abstain on the ground that federal "proceedings of substance on the merits" commenced with the preliminary-injunction motion and at that time there was no ongoing state proceeding. *Id.* at 773. The Eighth Circuit reversed, holding that "the federal case was not really advanced in proceedings of substance on the merits" because little more than motions for an injunction and TRO had taken place. *Id.* at 776 (internal quotation marks omitted). The core of *Aaron*'s holding was thus that mere motions for an injunction do not qualify as "proceedings of substance" in federal court. Neither the holding nor any language in *Aaron* suggests that federal courts should refuse to defer to a pending state-court proceeding simply because it has not *yet* reached the merits of the claim.

**[6]** Thus, because a parallel state action was ongoing, the district court was correct to abstain in the federal action concerning the 1040 E. Slauson property, Case No. 04-56134.

B

**[7]** The order of events is slightly different with regard to the 1010 E. Slauson property. The federal action was filed on July 14, 2004, and the state eminent domain proceeding was not filed until the following day, July 15, 2004. Thus, M&A

argues, the state action was not "ongoing" when the federal proceeding was initiated. From the above discussion it should be clear that this argument is specious. *Hicks* and *Hawaii Housing Authority* establish that *Younger* abstention applies even when the state action is not filed until after the federal action, as long as it is filed before proceedings of substance on the merits occur in federal court.

Despite M&A's contention to the contrary, that is the well-settled law in this circuit. In *Polykoff v. Collins*, 816 F.2d 1326 (9th Cir. 1987), we explained:

> Whether the state proceedings are "pending" is not determined by comparing the commencement dates of the federal and state proceedings. Rather, abstention under Younger may be required if the state proceedings have been initiated " 'before any proceedings of substance on the merits have taken place in the federal court.' "

*Id.* at 1332 (citing *Hawaii Housing Authority*, 467 U.S. at 238); *see also Comm. Telesys. Intern. v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1016 (9th Cir. 1999) (as an alternative ground, applying *Younger* abstention in a civil case seeking injunctive relief where the federal action was filed before the state action); *cf. Confederated Salish v. Simonich*, 29 F.3d 1398, 1405 (9th Cir. 1994) (stating that *Younger* abstention would generally be applicable although the federal case was filed first, but holding it inapplicable for reasons, not relevant here, related to the type of relief sought).

M&A cites *Beltran v. California*, 871 F.2d 777 (9th Cir. 1988), for the proposition that "Younger abstention requires that the federal courts abstain when state court proceedings were ongoing *at the time the federal action was filed*." *Id.* at 782 (emphasis added); *see also Canatella v. California*, 304 F.3d 843, 850 (9th Cir. 2002) ("We consider whether the state court proceedings were ongoing as of the time the federal

action was filed." (citing *Beltran*, 871 F.2d at 782)). It is true that, taken literally, this language from *Beltran* and *Canatella* would imply that the relevant date is the *filing* date of the federal action rather than the date when proceedings of substance on the merits begin. That implication, however, would not only be incompatible with the Supreme Court's clear instruction in *Hicks* and *Hawaii Housing Authority* that the federal filing date is *not* determinative;[4] it would also flatly contradict *Polykoff* and the other Ninth Circuit cases cited in the preceding paragraph.

[8] The context of those lines from *Beltran* and *Canatella* makes clear that no such dramatic rift with precedent was intended. In *Beltran*, we were faced with the question of what to do when state judicial proceedings had occurred but had *ended* by the time the federal district court decided whether or not to abstain. The court's statement that "Younger abstention requires that the federal courts abstain when state court proceedings were ongoing at the time the federal action was filed," then, was meant only to reject the proposition that abstention was unwarranted if the state proceedings had terminated after the federal filing but before the federal decision regarding abstention. *Canatella* cites *Beltran*'s reference to the federal filing date, but the distinction was irrelevant in that case because nothing had changed in state court between the federal filing date and the district court's decision on abstention. 304 F.3d at 848.

[9] Because a state action was initiated with regard to the 1010 E. Slauson property before any proceedings of substance had occurred in the corresponding federal action, the district court was correct to dismiss Case No. 04-56740.

---

[4]*See Hicks*, 422 U.S. at 349 ("[W]here state . . . proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of Younger v. Harris should apply in full force.")

III

For the foregoing reasons, the judgment of the district court in each of the cases under review is **AFFIRMED.**[5]

---

[5]M&A's request that we take judicial notice of various documents related to the state-court proceeding is DENIED as moot.