**MICROSOFT CORPORATION,**
Plaintiff,

v.

**UNITED STATES DEPARTMENT
OF JUSTICE, Defendant.**

**CASE NO. C16–0538JLR**

United States District Court,
W.D. Washington,
at Seattle.

Signed 02/08/2017

Alexander Adelman Berengaut, James McMackin Garland, Katharine Reams Goodloe, Covington & Burling LLP, Laura R. Handman, Davis Wright Tremaine, Washington, DC, Ambika K. Doran, Stephen M. Rummage, Davis Wright Tremaine, Seattle, WA, for Plaintiff.

Eric Soskin, Jennie L. Kneedler, US Department of Justice, Washington, DC, Helen J. Brunner, Kerry Jane Keefe, US Attorney's Office, Seattle, WA, for Defendant.

ORDER ON MOTION TO DISMISS

JAMES L. ROBART, United States District Judge

## I. INTRODUCTION

Before the court is Defendant United States Department of Justice's ("the

Government'.') motion to dismiss Plaintiff Microsoft Corporation's first amended complaint. (Mot. (Dkt. # 38).) Microsoft opposes the Government's motion. (Resp. (Dkt. # 44).) The court has considered the Government's motion, Microsoft's opposition to the Government's motion (Resp. (Dkt. # 44)), the Government's reply (Reply (Dkt. # 92)), the filings of amici (Amici Br. (Dkt. ## 43, 48, 49, 56, 57, 58, 61, 66, 71)), the relevant portions of the record, and the applicable law. In addition, the court heard argument from the parties on January 23, 2017. (1/23/17 Min. Entry (Dkt. # 105).) Being fully advised, the court GRANTS IN PART and DENIES IN PART the Government's motion for the reasons set forth below.

## II. BACKGROUND

### A. Statutory Background

The Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510, et seq., "addresses various areas of electronic surveillance, including wiretaps, tracking devices, stored wire and electronic communications, pen registers, and trap and trace devices." See United States v. Anderson, No. 2:15–cr–00200–KJD–PAL, 2016 WL 4191045, at *7 (D. Nev. Apr. 27, 2016). ECPA addresses "electronic communications services (e.g., the transfer of electronic messages, such as email, between computer users) and remote computing services (e.g., the provision of off-site computer storage or processing of data and files)." In re Zynga Privacy Litig., 750 F.3d 1098, 1103 (9th Cir. 2014). Under ECPA, an electronic communications service provider ("ECS provider") is an entity that offers "any service which provides to users thereof the ability to send or receive wire or electronic communications," 18 U.S.C. § 2510(15), and a remote computing service provider ("RCS provider") is an entity that provides "to the public ... computer storage or processing services by means of an electronic communications system," 18 U.S.C. § 2711(2). A subscriber is a person who uses one or more of those services. See, e.g., In re Application of the U.S. for an Order Pursuant to 18 U.S.C. § 2705(b), 131 F.Supp.3d 1266, 1268 (D. Utah 2015).

Title II of ECPA—the Stored Communications Act ("the SCA"), 18 U.S.C. §§ 2701, et seq.—governs the government's access to "electronic information stored in third party computers." In re Zynga, 750 F.3d at 1104; see also Stephen Wm. Smith, Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket, 6 HARV. L. & POL'Y REV. 313, 324 (2012) [hereinafter "Reforming ECPA's Secret Docket"] ("Title II of the ECPA ... prescribes requirements and procedures under which the government can obtain court orders (known as § 2703(d) orders) compelling access to stored wire and electronic communications, as well as related subscriber and customer account information."). Two sections of the SCA, 18 U.S.C. § 2703 and 18 U.S.C. § 2705, "regulate relations between a government entity which seeks information; a service provider which holds information; and the subscriber of the service who owns the information and is therefore a target of investigation." In re Application of the U.S., 131 F.Supp.3d at 1268. The information sought from ECS and RCS providers may contain "content" or "non-content" data. Id. Content includes items such as emails and documents, while non-content data includes things like email addresses and IP addresses. See, e.g., Req. for Int'l Judicial Assistance from the Turkish Ministry of Justice, No. 16-mc-80108-JSC, 2016 WL 2957032, at *1 (N.D. Cal. May 23, 2016); Integral Dev. Corp. v. Tolat, No. C 12–06575 JSW (LB), 2013 WL 2389691, at *1 (N.D. Cal. May 30, 2013).

Section 2703 of the SCA authorizes the government to acquire a subscriber's information from a service provider when the subscriber is a "target" of the government's information request. *See* 18 U.S.C. § 2703. The provision "establishes a complex scheme pursuant to which a governmental entity can, after fulfilling certain procedural and notice requirements, obtain information from [a service provider] via administrative subpoena or grand jury or trial subpoena." *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 974–75 (C.D. Cal. 2010) (citing 18 U.S.C. § 2703(b)). Section 2703 requires the government to give notice to subscribers that it has obtained their information from a service provider in some but not all circumstances. *See* 18 U.S.C. § 2703(a)-(c) (describing various notice requirements for communication contents and records in electronic storage and remote computing services).

Section 2705 of the SCA addresses when the government may withhold notice that is otherwise required under Section 2703. *See* 18 U.S.C. § 2705(a)-(b); *In re Application of the U.S.*, 131 F.Supp.3d at 1268. Under Section 2705(a), the government may delay giving notice to the subscriber that the government has collected the subscriber's information if certain requirements are met. *Id.* at 1267. Under Section 2705(b), the government may apply for "a preclusion-of-notice order." *Id.* Such an order "command[s] a provider of electronic communications service or remote computing service not to notify any person of the existence of a grand jury subpoena [or other acceptable court order under the SCA] which the Government has served on the provider." *Id.*; *see also Reforming ECPA's Secret Docket* at 325 ("The SCA does authorize the court to issue a gag order (called 'preclusion of notice') to service providers, commanding them not to notify any other person of the existence of

the court order."). A court may issue such a "preclusion-of-notice order" if the court determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in (1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial. 18 U.S.C. § 2705(b). "The combined effect of [Sections 2703] and 2705(b) is that the subscriber may never receive notice of a warrant to obtain content information from a remote computing service and the government may seek an order under § 2705(b) that restrains the provider indefinitely from notifying the subscriber." *In re Application of the U.S.*, 131 F.Supp.3d at 1271.

Since Congress passed the SCA in 1986, the technological landscape has changed considerably. *See* Orin Kerr, *The Next Generation Communications Privacy Act*, 162 U. PA. L. REV. 373, 375 (2014) ("In recent years, ECPA has become widely perceived as outdated."); *see also id.* at 376 (noting that at the time Congress passed ECPA, "[a]ccess to stored communications was a lesser concern," but "[s]ervice providers now routinely store everything, and they can turn over everything to law enforcement"). As technology changes, the public has vigorously debated the appropriate reach of the government's electronic surveillance of its citizens. *See, e.g., Reforming ECPA's Secret Docket* at 313–14; Jonathan Manes, *Online Service Providers & Surveillance Law Technology*, 125 Yale L.J. F. 343, 346 (Mar. 3, 2016) ("Over the past two-and-a-half years, we have had the most robust public discussion about surveillance in a generation."). As former Magistrate Judge Paul S. Grewal

noted, "[w]arrants for location data, cell phone records[,] and especially email rule the day." *In Matter of Search Warrant for [Redacted]@hotmail.com*, 74 F.Supp.3d 1184, 1185 (N.D. Cal. 2014). And according to Magistrate Judge Stephen Wm. Smith, the "ECPA docket ... handles tens of thousands of secret cases every year." *Reforming ECPA's Secret Docket* at 313.

The public debate has intensified as people increasingly store their information in the cloud[1] and on devices with significant storage capacity. *See In re Grand Jury Subpoena, JK–15–029*, 828 F.3d 1083, 1090 (9th Cir. 2016) (quoting *United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013)) (noting that "electronic storage devices such as laptops 'contain the most intimate details of our lives: financial records, confidential business documents, medical records[,] and private emails,'" which "'are expected to be kept private'"). Government surveillance aided by service providers creates unique considerations because of the vast amount of data service providers have about their customers. For example, "[i]nternet service providers know the websites we have viewed. Google keeps records of our searches. Facebook keeps records of our 'friends,' our communications, and what we 'like.'" *Online Service Providers & Surveillance Law Technology* at 349. These developments have led several courts to conclude that certain material stored with providers deserves constitutional protection. *See, e.g., In re Grand Jury Subpoena*, 828 F.3d at 1090 ("[E]mails are to be treated as closed, addressed packages for expectation-of-privacy purposes."); *Search of Info. Associat-*

*ed with Email Addresses Stored at Premises Controlled by Microsoft Corp.*, 212 F.Supp.3d 1023, 1034–35 (D. Kan. 2016) ("In considering the email context specifically, courts have held an individual enjoys a right to privacy in his or her emails."); *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010) (holding that "a subscriber enjoys a reasonable expectation of privacy in the contents of emails").

**B. This Lawsuit**

Against this statutory and technological backdrop, Microsoft[2] filed this suit on April 14, 2016 (Compl. (Dkt. # 1)), and later amended its complaint on June 17, 2016 (FAC (Dkt. # 28)). Microsoft seeks declaratory relief. (*See id.* ¶¶ 33, 41.) The gravamen of Microsoft's complaint is that Section 2705(b) is unconstitutional under the First and Fourth Amendments and that Section 2703 is unconstitutional under the Fourth Amendment "to the extent it absolves the government of the obligation to give notice to a customer whose content it obtains by warrant, without regard to the circumstances of the particular case." (*Id.* ¶ 35.) In Microsoft's view, "the government has increasingly adopted the tactic of obtaining the private digital documents of cloud customers not from the customers themselves, but through legal process directed at online cloud providers like Microsoft." (*Id.* ¶ 4.) The government then "seeks secrecy orders under 18 U.S.C. § 2705(b) to prevent Microsoft from telling its customers (or anyone else) of the government's demands" for that information. (*Id.*) According to Microsoft, "[t]he vast

---

1. The "cloud" is "a metaphor for the ethereal internet." *In re U.S.'s Application for a Search Warrant to Seize & Search Elec. Devices from Edward Cunnius*, 770 F.Supp.2d 1138, 1144 n.5 (W.D. Wash. 2011) (internal quotations omitted) (quoting David A. Couillard, *Defogging the Cloud: Applying Fourth Amendment Principles to Evolving Privacy Expectations in*

*Cloud Computing*, 93 MINN. L. REV. 2205, 2216 (2009)).

2. Microsoft is both an ECS provider and an RCS provider. *See Crispin*, 717 F.Supp.2d at 978 (citing *United States v. Weaver*, 636 F.Supp.2d 769, 770 (C.D. Ill. 2009)).

majority of these secrecy orders relate[ ] to consumer accounts and prevent Microsoft from telling affected individuals about the government's intrusion into their personal affairs; others prevent Microsoft from telling business customers that the government has searched and seized the emails of individual employees of the customer." (*Id.* ¶ 16.) Microsoft alleges that federal courts have issued "more than 3,250 secrecy orders" over a 20–month period ending in May 2016, and that nearly two-thirds of those orders are for an indefinite length of time. (*Id.* ¶ 5.)

Microsoft contends that Section 2705(b) is unconstitutional facially and as applied because it violates the First Amendment right of a business to "talk to [the business's] customers and to discuss how the government conducts its investigations." (*Id.* ¶ 1.) Specifically, Microsoft contends that Section 2705(b) is overbroad, imposes impermissible prior restraints on speech, imposes impermissible content-based restrictions on speech, and improperly inhibits the public's right to access search warrants. (*Id.* ¶¶ 23–26.)

Microsoft also alleges that Sections 2705(b) and 2703 are unconstitutional facially and as applied because they violate the Fourth Amendment right of "people and businesses ... to know if the government searches or seizes their property." (*Id.* ¶ 33.) Microsoft contends that the statutes are facially invalid because they allow the government to (1) forgo notifying individuals of searches and seizures, and (2) obtain secrecy orders that "prohibit providers from telling customers when the government has accessed their private information" without constitutionally sufficient proof and without sufficient tailoring. (*Id.* ¶ 35.) Microsoft further alleges that Sections 2703 and 2705(b) are unconstitutional as applied because "[t]he absence of a government notice obligation, combined with the imposition of secrecy orders on

Microsoft, has resulted, and will continue to result, in unconstitutional delay of notice to Microsoft's customers, in violation of their Fourth Amendment rights." (*Id.* ¶ 40.) Microsoft asserts that it has third-party standing to vindicate its customers' rights to notice of search and seizure under the Fourth Amendment. (*Id.* ¶¶ 38–39.)

The Government moves to dismiss Microsoft's first amended complaint for lack of standing and failure to state a claim. (*See* Mot.)

## III. ANALYSIS

### A. Legal Standards

#### 1. Motion to Dismiss Under Rule 12(b)(1)

■ "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.' " *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013). The case or controversy requirement demands that a plaintiff have standing. *See id.*; *see also Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). To establish standing, a plaintiff must demonstrate three elements: (1) a "concrete, particularized, and actual or imminent" injury that is (2) "fairly traceable to the challenged action" and (3) "redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010). These requirements are more succinctly referred to as injury, causation, and redressability. *Nw. Immigrant Rights Project v. United States Citizenship & Immigration Servs.*, —— F.R.D. ——, 2016 WL 5817078, at *6 (W.D. Wash. Oct. 5, 2016).

■ Special standing considerations apply to a declaratory judgment action.

"Declaratory judgment is not a corrective remedy and should not be used to remedy past wrongs." *Williams v. Bank of Am.*, No. 2:12-cv-2513 JAM AC PS, 2013 WL 1907529, at *5–6 (E.D. Cal. May 7, 2013). Accordingly, when a "plaintiff[ ] seeks declaratory and injunctive relief only," "there is a further requirement that [the plaintiff] show a very significant possibility of future harm" in addition to the three Article III standing elements. *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996); *see also Canatella v. California*, 304 F.3d 843, 852 (9th Cir. 2002) ("In the particular context of injunctive and declaratory relief, a plaintiff must show that he has suffered or is threatened with a concrete and particularized legal harm ... coupled with a sufficient likelihood that he will again be wronged in a similar way." (citations and internal quotation marks omitted)); *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) ("[P]laintiffs must demonstrate a credible threat exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief." (internal quotations omitted)). In other words, a plaintiff may not "demonstrate only a past injury." *San Diego Cty. Gun Rights*, 98 F.3d at 1126.

▮▮▮ "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S.Ct. at 1547. "Where ... a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element," *id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)), and "[t]he court analyzes standing claim by claim," *Antman v. Uber Techs., Inc.*, No. 15–cr–01175–LB, 2015 WL 6123054, at *9 (N.D. Cal. Oct. 19, 2015). "When a motion to dismiss attacks subject-matter jurisdiction under Rule 12(b)(1) on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reason-

able inferences in the plaintiff's favor." *City of L.A. v. JPMorgan Chase & Co.*, 22 F.Supp.3d 1047, 1052 (C.D. Cal. 2014). "The jurisdictional question of standing precedes, and does not require, analysis of the merits" of the plaintiff's claims. *Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2007).

### 2. Motion to Dismiss Under Rule 12(b)(6)

▮▮▮ When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

### B. First Amendment Claim

The Government contends that Microsoft's First Amendment challenge fails on several grounds. The court addresses each of the Government's arguments in turn.

### 1. Standing

The Government first argues that Microsoft lacks standing to challenge Section 2705(b) under the First Amendment because Microsoft fails to identity a concrete and particularized injury or a favorable judgment that would redress Microsoft's alleged injury. (Mot. at 10–13.) Specifically, the Government argues that Microsoft has not identified a concrete and particularized injury and contends that a favorable judgment would not redress Microsoft's alleged injury. (*See id.* at 10–12.)

#### a. Injury in Fact and Likelihood of Future Injury

 "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130. An injury is concrete when it actually exists. *See Spokeo*, 136 S.Ct. at 1548 ("A 'concrete' injury must be 'de facto'; that is, it must actually exist."). In addition, because it seeks declaratory relief, Microsoft must allege a likelihood of future injury. *See Canatella*, 304 F.3d at 852.

Microsoft alleges that Section 2705(b) impinges on its First Amendment rights because the statute allows court orders that imposes prior restraints and content-based restrictions on speech. (*See* FAC ¶¶ 24 ("The statute authorizes secrecy orders that prohibit, *ex ante*, providers such as Microsoft from engaging in core protected speech under the First Amendment,

i.e., speech about the government's access to customers'. sensitive communications and documents and its increased surveillance on the Internet."), 25 ("Secrecy orders issued under Section 2705(b) also function as content-based restrictions on speech . . . .").) Microsoft also asserts that orders issued under Section 2705(b) "improperly inhibit the public's right of access to search warrants under both the common law and the First Amendment." (*Id.* ¶ 26.) In its response to the Government's motion, Microsoft contends that it has suffered "thousands of concrete, particularized injuries" in the form of "the secrecy orders to which Microsoft has been subject since 2014." (Resp. at 12 (emphasis omitted) (citing FAC ¶ 16).) Microsoft further argues that "Section 2705(b) also inflicts economic injury on Microsoft by eroding customer confidence in its cloud services." (*Id.* at 13 (citing FAC ¶¶ 5, 39)); *see also San Diego Cty. Gun Rights*, 98 F.3d at 1130 ("Economic injury is clearly a sufficient basis for standing."). Microsoft contends that the Government's arguments regarding the injury element are misplaced because the arguments "preview the Government's flawed merits argument that Section 2705(b) passes constitutional muster, just because some 2705(b) orders must be constitutional." (Resp. at 13.)

 The court finds that Microsoft has sufficiently alleged an injury-in-fact and a likelihood of future injury. Microsoft alleges "an invasion of" its "legally protected interest" in speaking about government investigations due to indefinite nondisclosure orders issued pursuant to Section 2705(b).[3] (FAC ¶¶ 1 ("[Section 2705(b)] violates . . . the First Amendment, which enshrines Microsoft's rights to talk to its customers and to discuss how the govern-

---

3. In arguing that Microsoft has failed to state a First Amendment claim, the Government argues that Microsoft does not have an "absolute right" to speak about the Government's investigations. The court addresses that argument *infra* § III.C.3.a.

ment conducts its investigations. . . ."); 5 (alleging that non-disclosure orders "have impaired Microsoft's right to be transparent with its customers, a right guaranteed by the First Amendment"); 24; 32–33.) The court concludes that Section 2705(b) orders that indefinitely prevent Microsoft from speaking about government investigations implicate Microsoft's First Amendment rights.

██ First Amendment rights must be balanced against "the substantial burden openness [may] impose on government investigations." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1217 (9th Cir. 1989) (holding that the First Amendment did not guarantee public access to warrant applications while a pre-indictment investigation was ongoing, but declining to decide whether there was such a right post-indictment); *see also In re § 2703(d)*, 787 F.Supp.2d 430, 438 (E.D. Va. 2011) (noting that First Amendment interests may have to "yield to the investigatory process" under certain circumstances). In at least some circumstances, however, the Government's interest in keeping investigations secret dissipates after an investigation concludes and at that point, First Amendment rights may outweigh the Government interest in secrecy. *See In re Sealing & Non–Disclosure of Pen/Trap/2703(d) Orders*, 562 F.Supp.2d 876 (S.D. Tex. 2008); *In Matter of Search Warrant*, 74 F.Supp.3d at 1186 ("If the court were dealing with a grand jury subpoena, with its historical presumption of secrecy, perhaps an infinite period of Microsoft silence would be appropriate. But in the absence of such a historical presumption, the First Amendment rights of both Microsoft and the public, to say nothing of the rights of the target, must be given at least some consideration."). When the government's concern dissipates, the First Amendment's protection of speech about governmental activity—including criminal investigations—warrants consideration. *See Gentile*

*v. State Bar of Nev.*, 501 U.S. 1030, 1034, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) ("There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment."); *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) ("[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.").

Accordingly, the court concludes that Microsoft has adequately alleged an injury to a "legally protected interest." For example, the Southern District of Texas considered whether "electronic surveillance court orders may properly be kept secret, by sealing and non-disclosure provisions, for an indefinite period beyond the underlying criminal investigation." *Id.* at 877. The court concluded that "setting a fixed expiration date on sealing and non-disclosure of electronic surveillance orders is not merely better practice, but required by . . . the First Amendment prohibition against prior restraint of speech." *Id.* at 878. In a case involving grand jury proceedings, the Supreme Court similarly held that a "Florida law [that] prohibit[ed] a grand jury witness from disclosing his own testimony after the term of the grand jury has ended . . . violates the First Amendment to the United States Constitution." *Butterworth v. Smith*, 494 U.S. 624, 626, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990). And, finally, the Ninth Circuit Court of Appeals decided that there is no First Amendment right to access warrant application materials during an ongoing investigation pre-indictment, but expressly left open the question of whether the public has such a right after an indictment issues. *Times Mirror Co.*, 873 F.2d at 1217; *see also United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194–95 (9th Cir. 2011) (stating

that the Ninth Circuit had "expressly reserved whether the public has a constitutional right of access after an investigation has been terminated"). These cases either necessarily imply or suggest that indefinite non-disclosure orders that extend beyond the life of an ongoing investigation implicate First Amendment rights.

In addition to alleging an injury to a legally protected interest, Microsoft adequately alleges that this "invasion" is "particularized" because the injury Microsoft complains of "affect[s] [Microsoft] in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130. Microsoft's alleged injury is also concrete because Microsoft alleges that it has personally been subjected to thousands of indefinite non-disclosure orders that implicate its First Amendment Rights. (*See, e.g.*, FAC ¶ 5); *see also Spokeo*, 136 S.Ct. at 1548 ("A 'concrete' injury must be 'de facto'; that is, it must actually exist.") For these reasons, the court concludes that Microsoft has adequately alleged an injury-in-fact.

The Government makes several arguments to demonstrate that Microsoft has not alleged a First Amendment injury, but those arguments flow from the same premises: that the nondisclosure orders to which Microsoft is subject under Section 2705(b) contain different terms, were issued according to the specific context in which they arose, and require individualized consideration of the context in which each order was issued. (*See* Mot. at 11.) Essentially, the Government argues that Microsoft alleges a generalized grievance that cannot confer standing. (*See* Reply at 2–3.)

 The court is unpersuaded. A generalized grievance is an "asserted harm" that is "shared in substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S. at 499, 95 S.Ct. 2197. Accordingly, a generalized grievance presents "abstract questions of wide public significance." *Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. 752. Here, however, Microsoft alleges that it has been subjected to thousands of nondisclosure orders that Microsoft asserts violate its First Amendment rights. (*See* Compl. ¶ 5.) Microsoft reasonably believes that it is likely to be subject to similar orders in the future. (*Id.* ¶ 33.) Although the privacy issues underpinning these nondisclosure orders may be of widespread public interest, Microsoft seeks to vindicate its own First Amendment rights. Whether or not the orders were issued under varying circumstances or the ultimate issues in this case may have to be resolved "using legal tests that are context[-] and fact-specific" (Mot. at 11), Microsoft has alleged a concrete and particularized First Amendment injury.

In addition, the Government's arguments assail the merits of Microsoft's First Amendment claim, not Microsoft's standing. (*See* Mot. at 10–11.) For example, the Government argues that Microsoft has not "identif[ied] any particular order that this [c]ourt could analyze to determine the existence, nature, and extent of injury." (*Id.* at 10.) The Government further argues that the Government obtains the nondisclosure orders via different procedures, which means the court can "derive[ ] . . . no common legal principle" by which to analyze the orders under the First Amendment. (*Id.* at 10–11.) At this stage, however, Microsoft is not required to provide evidence to support its claims. It must only allege that it has suffered an injury in fact, *City of L.A.*, 22 F.Supp.3d at 1052, and the court finds that Microsoft has adequately done so.

 Microsoft also sufficiently alleges a likelihood of similar harm in the future. *See Canatella*, 304 F.3d at 854. Specifically, Microsoft asserts that without a declaration that Section 2705(b) is unconstitutional insofar as it permits indefinite nondisclosure orders, "the government will

continue to seek, and courts will continue to issue, secrecy orders that impermissibly restrict the First Amendment rights of Microsoft and similarly situated providers." (FAC ¶ 33.) Microsoft bolsters its prediction by alleging that over a 20-month period preceding this lawsuit, the Government sought and obtained 3,250 orders—at least 450 [4] of which accompanied search warrants—that contained indefinite nondisclosure provisions. (Id. ¶¶ 5, 32.) In addition, Microsoft alleges that in this District alone, it has received at least 63 such orders since September 2014. (Id. ¶ 16.) Because these orders have been frequent and issued recently, the Government will likely continue to seek and obtain them. Accordingly, Microsoft's "fears" of similar injuries in the future are not "merely speculative." [5] Mendia v. Garcia, 165 F.Supp.3d 861, 895 (N.D. Cal. 2016).

For the foregoing reasons, the court concludes that Microsoft has adequately alleged an injury and a likelihood of similar future injury for the purposes of establishing standing to pursue its First Amendment claim.

### b. Causation

■ "To show causation, the plaintiff must demonstrate a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Salmon Spawning & Recovery All. v. Gutierrez, 545 F.3d 1220, 1227 (9th Cir. 2008). "Although the traceability of a plaintiff's harm to the defendant's actions need not rise to the level of proximate causation, Article III does require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." Native Village of Kivalina v. ExxonMobil Corp., 663 F.Supp.2d 863, 877 (N.D. Cal. 2009) (internal quotation marks omitted).

■ Neither party substantively addresses the causation element of the standing inquiry. (See Mot.; Resp.) However, the court has an independent duty to ensure that it has subject matter jurisdiction over this action. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Microsoft alleges that indefinite nondisclosure orders issued pursuant to Section 2705(b) prevent Microsoft from engaging in protected speech. (See generally FAC.) This alleged injury—the curtailing of Microsoft's speech—is

---

4. In different places in its first amended complaint, Microsoft alleges that either 450 or 650 nondisclosure orders accompanied search warrants. (Compare FAC ¶ 5, with id. ¶ 32.)

5. At oral argument, Microsoft styled its challenge to the constitutionality of Section 2705(b) as a kind of pre-enforcement challenge. A pre-enforcement challenge raises ripeness questions. See ProtectMarriage.com-Yes on 8 v. Bowen, 752 F.3d 827, 839 (9th Cir. 2014). Ripeness is a jurisdictional consideration because it implicates Article III's case or controversy requirement. See Guatay Christian Fellowship v. Cty. of San Diego, 670 F.3d 957, 980 (9th Cir. 2011). However, due to the overwhelming importance of the rights protected by the First Amendment, courts relax the usual standing principles and apply a three-part test to determine whether a plaintiff has established standing to pursue a First Amendment claim when the plaintiff has not yet suffered an actual injury. See Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 851 (9th Cir. 2007); see also Wolfson v. Brammer, 616 F.3d 1045, 1058 (9th Cir. 2010). Despite this characterization, however, the court finds for the reasons noted above that Microsoft need not allege facts regarding the three elements necessary to mount a pre-enforcement challenge. See Brammer, 616 F.3d at 1058. Because Microsoft has alleged a past injury, it need only allege a likelihood of similar injury in the future in this action for declaratory relief. See, e.g., Canatella, 304 F.3d at 852.

fairly traceable to the conduct complained of—indefinite nondisclosure orders issued pursuant to Section 2705(b). Accordingly, the court finds that Microsoft has sufficiently alleged causation.

### c. Redressability

 A plaintiff establishes redressability by demonstrating "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury[, but he] need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) (plurality opinion). "In the context of declaratory relief, a plaintiff demonstrates redressability if the court's statement would require the defendant to act in any way that would redress past injuries or prevent future harm." *Viet. Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 205 (N.D. Cal. 2012) (internal quotation marks omitted); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("If respondent had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm."). A plaintiff is entitled to a presumption of redressability where he "seeks declaratory relief against the type of government action that indisputably caused him injury." *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (determining whether redressability requirement was met in a declaratory judgment action involving the constitutionality of the Foreign Intelligence Surveillance Act ("FISA")).

The Government argues that even if the court declared Section 2705(b) unconstitutional, that declaration would not redress Microsoft's injury. (*See* Mot. at 12–13.) The Government contends that "[a] favorable judgment in this case would not release Microsoft from those individual [nondisclosure] orders, so its alleged injury would not be remedied and redressability is therefore lacking." (*Id.* at 12.) Microsoft responds that it "is not asking this [c]ourt to 'release' it from secrecy orders." (Resp. at 15.) Rather, Microsoft "seeks a declaration that Section 2705(b) violates the First Amendment, relief that would prevent the Government from continuing to rely on the statute to restrain Microsoft's speech in the future." (*Id.*) The Government views Microsoft's response as an attempt to "time-shift" the basis for its standing by seeking redress that would prevent future injuries rather than remedy past injuries. (Mot. at 3.)

 The declaratory relief Microsoft seeks would not remedy its past injuries, but it would "prevent likely future injuries" in the form of additional indefinite nondisclosure orders. *Mayfield*, 599 F.3d at 972. Although Microsoft alleges a past injury—being subjected to thousands of indefinite nondisclosure orders since 2014—that past injury strengthens Microsoft's allegation that it faces a substantial likelihood of the same kind of harm in the future. (FAC ¶ 33.) Microsoft alleges that without a declaration from the court regarding Section 2705(b)'s constitutionality, "the [G]overnment will continue to seek, and courts will continue to issue, secrecy orders that impermissibly restrict the First Amendment rights of Microsoft." (*Id.*) Thus, a declaration that Section 2705(b) is unconstitutional because it permits courts to issue indefinite nondisclosure orders would redress Microsoft's future injuries. In the context of declaratory relief, such allegations suffice. *See Viet. Veterans of Am.*, 288 F.R.D. at 205.

## 2. Prudential Considerations

The Government next argues that "comity grounds" support dismissing Microsoft's First Amendment claims because "[i]t is a settled principle that a challenge to an order of a coordinate court may not be heard by a different court."[6] (Mot. at 16 (citing *Lapin v. Shulton*, 333 F.2d 169, 172 (9th Cir. 1964); *Treadaway v. Acad. of Motion Picture Arts & Scis.*, 783 F.2d 1418, 1422 (9th Cir. 1986)).) Microsoft responds that this argument fails because "Microsoft is not bringing a collateral attack on other courts' orders; rather, it seeks a judgment that will be binding on the Government when it seeks secrecy orders in other courts." (Resp. at 15 n.2.)

▮ The cases the Government cites establish that when a party seeks to modify or revoke an injunction or final order, the party must seek relief from the court that issued the order. *See Lapin*, 333 F.2d at 170 ("[T]he present proceedings to secure dissolution of an injunction on the grounds here asserted should have been brought in the issuing court, the District Court of Minnesota."); *Treadaway*, 783 F.2d at 1422 ("When a court entertains an independent action for relief from the final order of another court, it interferes with and usurps the power of the rendering court just as much as it would if it were reviewing that court's equitable decree."). "[F]or a nonissuing court to entertain an action for such relief would be seriously to interfere with, and substantially to usurp, the inherent power of the issuing court." *Lapin*, 333 F.2d at 172. Accordingly, "considerations of comity and orderly administration of justice demand that the nonrendering court … decline jurisdiction." *Id.*

Here, however, Microsoft does not seek to have this court invalidate other courts' orders. Rather, Microsoft asks the court to determine whether Section 2705(b) is constitutional insofar as it permits future courts to indefinitely prevent disclosure of the circumstances of government investigations. For this reason, the comity concerns that the Ninth Circuit addressed in *Lapin* and *Treadaway* do not apply, and the court declines to dismiss Microsoft's First Amendment claim on this basis.

## 3. Stating a First Amendment Claim

The Government also argues that Microsoft fails to state a First Amendment claim for which relief may be granted. The court now analyzes the Government's arguments in favor of dismissal.

### a. Prior Restraints and Content–Based Regulations

▮ The Government first contends that Microsoft has no absolute right to discuss the Government's requests for information or the substance of any nondisclosure orders to which Microsoft is bound. (*See* Mot. at 19; Reply at 8–9.) As Microsoft acknowledges (FAC ¶ 28), First Amendment rights are not absolute, *see Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 570, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). However, as the court explained above, Microsoft alleges that indefinite nondisclosure orders implicate its First Amendment rights because the orders impinge on its right to speak about governmental affairs and the public's right to access search warrants. *See supra* § III.B.1.a; (FAC ¶¶ 24–26.) Microsoft also alleges that the orders categorically bar Microsoft from speaking about the existence of the orders and

---

**6.** The Government also argues that Microsoft's Fourth Amendment claims should be dismissed on prudential grounds because those claims do not fall within the Fourth Amendment's zone of interests. However, the court does not address this argument or the Government's arguments that Microsoft has failed to state a Fourth Amendment claim because the court concludes that Microsoft may not pursue such claims due to Supreme Court and Ninth Circuit precedent. *See infra* § III.C.

therefore constitute content-based prior restraints. (FAC ¶¶ 25, 28–30.)

■ "The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Snyder v. Phelps*, 562 U.S. 443, 452, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). For these reasons, prior restraints of and content-based restrictions on speech regarding matters of public concern are often impermissible.

■ "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) (internal quotation marks and emphasis omitted). Prior restraints are "the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n*, 427 U.S. at 559, 96 S.Ct. 2791. Although prior restraints are not unconstitutional per se, there is a heavy presumption against their constitutionality. *FW/ PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Accordingly, the Government bears the burden of "showing justification for the imposition of such a restraint." *Capital Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1305, 103 S.Ct. 3524, 77 L.Ed.2d 1284 (1983).

■ Similarly, "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, —— U.S. ——, 135 S.Ct. 2218, 2226, 192 L.Ed.2d 236 (2015). Content-based restrictions are subject to strict scrutiny, *id.*, and are presumptively invalid, *United States v. Alvarez*, 567 U.S. 709, 132 S.Ct. 2537, 2544, 183 L.Ed.2d 574 (2012). A regulation of speech "is content-based if either the underlying purpose of the regulation is to suppress particular ideas or if the regulation, by its very terms, singles out particular content for differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc) (internal citation omitted).

The Government argues that even if the nondisclosure orders constitute a prior restraint, "the substantive basis and procedural safeguards provided by [S]ection 2705(b) are sufficient to satisfy even the most searching First Amendment inquiry imposed in the prior restraint context." (Mot. at 21 (citing *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)).) The Government also argues that Microsoft has not "demonstrated any likelihood that the judicially-approved 2705(b) orders to which it is subject would fail the substantive First Amendment requirements for content-based restrictions on speech." (*Id.*) Microsoft counters that it has adequately alleged that the indefinite orders are both prior restraints and content-based regulations and that the statute fails to satisfy strict scrutiny. (Resp. at 20; *see also* FAC ¶¶ 24–25.)

The court begins its analysis by determining whether Microsoft has adequately stated a claim that the Section 2705(b) orders at issue violate the First Amendment as impermissible prior restraints. Section 2705(b) allows for indefinite nondisclosure orders, which restrain Microsoft from speaking about government investigations without any time limit on that restraint. For this reason, at least two other

district courts have concluded that indefinite nondisclosure orders pursuant to Section 2705(b) constitute prior restraints on speech. *See Matter of Grand Jury Subpoena for: [Redacted]@yahoo.com*, 79 F.Supp.3d 1091, 1091 (N.D. Cal. 2015) ("[A]n indefinite order would amount to an undue prior restraint of Yahoo!'s First Amendment right to inform the public of its role in searching and seizing its information."); *In re Sealing*, 562 F.Supp.2d at 878, 881 (holding that an indefinite nondisclosure order would violate "the First Amendment prohibition against prior restraint of speech" and stating that "indefinitely sealed means permanently sealed"); *see also In re Application of the U.S.*, 131 F.Supp.3d at 1270–71 (concluding that under Section 2705(b), "notice by the provider to the subscriber may be *indefinitely* restrained," and "[g]overnment restraint of an innocent provider from fulfilling contractual notice and privacy obligations raises concerns different than direct government notice to an investigation target").

■ Nonetheless, the Government contends that even if certain Section 2705(b) orders impose prior restraints on speech, Section 2705(b) contains sufficient procedural safeguards. (Mot. at 21.) "Where expression is conditioned on governmental permission, such as a licensing system for movies, the First Amendment generally requires procedural protections to guard against impermissible censorship." *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008) (citing *Freedman*, 380 U.S. at 58, 85 S.Ct. 734). The required proce-

dural protections are: (1) "any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained"; (2) "expeditious judicial review of that decision must be available"; and (3) "the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 321, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (quoting *FW/PBS*, 493 U.S. at 227, 110 S.Ct. 596). However, the indefinite nondisclosure orders that Section 2705(b) allows are not administrative prior restraints imposed by a licensing scheme because Section 2705(b) itself does not impose the prior restraint; rather, the statute allows a court to issue an order imposing a prior restraint on speech. *See* 18 U.S.C. § 2705(b). Accordingly, the orders at issue here are more analogous to permanent injunctions preventing speech from taking place before it occurs. *See, e.g., Alexander*, 509 U.S. at 550, 113 S.Ct. 2766 (1993) ("Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints."); *Oakley, Inc. v. McWilliams*, 879 F.Supp.2d 1087, 1089–90 (C.D. Cal. 2012). For this reason, the *Freedman* procedural safeguards do not appear to apply in this context.

■ In any event, even if the procedural safeguards outlined in *Freedman* are met, the Government must show that the statute in question meets strict scrutiny.[7] *See In re Nat'l Sec. Letter*, 930

---

7. At oral argument, the Government argued for the first time that the speech at issue here is subject to lesser scrutiny because the speech does not address matters of public concern. Even if the Government had properly presented this theory, the court disagrees with the Government's characterization. *See Snyder*, 562 U.S. at 452, 131 S.Ct. 1207 (describing matters of public concern as matters related to political, social, or other concerns

to the community); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 777, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ("The inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual.").

As the Government points out (MTD at 21; Reply at 10), the Second Circuit has held in

F.Supp.2d 1064, 1071 (N.D. Cal. 2013) (holding that the Government must "meet the heightened justifications for sustaining prior-restraints announced in *Freedman v. Maryland*" and that the restraint "must be narrowly tailored to serve a compelling government interest"), 1074 ("Simply because the government chose to meet the *Freedman* safeguards in issuing and seeking to compel the [National Security Letter] at issue here, does not foreclose Petitioner's ability to challenge the constitutionality of the statute's provisions."); *Admiral Theatre v. City of Chi.*, 832 F.Supp. 1195, 1203 (N.D. Ill. 1993) (noting that even if procedural safeguards are met "the system is still subject to 'least restrictive means' scrutiny to determine its constitutionality"). Microsoft alleges that the indefinite nondisclosure orders are prior restraints because they prohibit Microsoft from engaging in protected speech before Microsoft actually engages in that speech. (FAC ¶ 24.) Microsoft further alleges that the orders are not narrowly tailored to serve the government's interest in conducting sensitive investigations because Microsoft continues to be restrained from speaking even after "secrecy is no longer required to satisfy" the government's interest. (*Id.* ¶ 28; *see also id.* ¶ 6.) Specifically, Microsoft contends that for purposes of issuing an indefinite nondisclosure order under Section 2705(b), "the assessment of adverse consequences need not be based on the specific facts of the investigation" and "the assess-

ment is made only at the time the government applies for the secrecy order." (*Id.* ¶ 6 (emphasis omitted).) For these reasons, Microsoft's complaint contains sufficient facts that—taken as true and viewed in the light most favorable to Microsoft—state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

▮ In addition, Microsoft alleges that Section 2705(b) orders preclude Microsoft from speaking about an entire topic—government surveillance and investigations. (*See* FAC ¶¶ 16, 25.) Microsoft states that of the more than 6,000 demands for customer information that is has received, a majority of the demands are coupled with orders "forbidding Microsoft from telling the affected customers that the government was looking at their information." (*Id.* ¶ 16.) This prohibition amounts to a content-based restriction on speech, which, like a prior restraint, is subject to strict scrutiny. *See Reed*, 135 S.Ct. at 2226.

Microsoft further alleges that three parts of Section 2705(b) fail strict scrutiny review: (1) that Section 2705(b) "allows a court to issue secrecy orders of a prolonged duration (FAC ¶ 28), (2) that "reason to believe standard" in Section 2705(b) "fails to require that a secrecy order be the least restrictive means available" in a particular case (*id.* ¶ 29), and (3) that Section 2705(b) allows an indefinite nondisclosure order "in the absence of any case-specific compelling interest," is "substan-

the National Security Letter context that "the nondisclosure requirement of subsection 2709(c) is not a typical prior restraint or a typical content-based restriction warranting the most rigorous First Amendment scrutiny." *John Doe*, 549 F.3d at 877. However, the court is not persuaded to apply the same logic here. First, the Second Circuit based its conclusion in large part on the national security context in which Section 2709(c) operated. *See generally id.* Although Section 2705(b) made be utilized in national security investi-

gations, nothing indicates that national security investigations are the sole use or purpose of nondisclosure orders under Section 2705(b). Second, the statutory provision at issue in *John Doe* imposed temporal limits on the nondisclosure orders. *Id.* at 877. Such temporal limitations are not required under Section 2705(b), and according to Microsoft's amended complaint, are frequently absent from orders issued pursuant to that statute. (*See* FAC ¶ 33).

tially broader than necessary," and "provides no meaningful constraints, (*id.* ¶ 30). The court concludes that Microsoft has alleged sufficient facts that when taken as true state a claim that certain provisions of Section 2705(b) fail strict scrutiny review and violate the First Amendment.

However, even if a lesser standard of review applies to Microsoft's First Amendment claim, Microsoft's allegations support the reasonable inference that indefinite nondisclosure orders impermissibly burden Microsoft's First Amendment rights. *See, e.g., Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 757, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and describing the balancing test that is applied in First Amendment cases involving matters of private concern); *In re § 2703(d)*, 787 F.Supp.2d at 438 (describing a balancing approach for evaluating First Amendment rights in the context of government investigations). For example, Microsoft alleges that indefinite nondisclosure orders continue to burden its First Amendment rights after the government's interest in keeping investigations secret dissipates. (FAC ¶¶ 28, 32.) In addition, Microsoft alleges that courts do not have occasion to revisit the indefinite orders unless Microsoft challenges the individual orders in court. (*Id.* ¶ 19). Accepting these allegations as true, Microsoft's First Amendment rights may outweigh the state's interest such that indefinite disclosure orders impermissibly

burden Microsoft's rights. Accordingly, Microsoft's complaint contains sufficient factual allegations to support a First Amendment claim.

For these reasons, the court concludes Microsoft has adequately alleged a facially plausible First Amendment claim. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

### b. Overbreadth Doctrine

 The Government also argues that Microsoft fails to state a First Amendment overbreadth claim because "as a party subject to numerous [S]ection 2705(b) orders, Microsoft is wrong to suggest that it may seek invalidation of that section pursuant to the 'overbreadth doctrine.'"[8] (Mot. at 18.) In addition, the Government contends that the overbreadth challenge should be dismissed because "the only fact alleged by Microsoft to support its facial challenge is the number of purportedly 'indefinite' orders, ... which says nothing about whether the application has been applied constitutionally in those instances." (*Id.* at 19.) Microsoft responds that it can assert an overbreadth challenge even though "it bases its allegations on the thousands of unconstitutional secrecy orders that stifle its own speech." (Resp. at 17 (emphasis omitted).) Microsoft contends that it challenges three aspects of Section 2705(b) on First Amendment grounds, that "[i]f any one of these provisions is invalid, the statute is unconstitutional on its face," and that it has thus adequately stated an overbreadth claim. (*Id.*)

**8.** The Government's briefing contests Microsoft's overbreadth challenge on Rule 12(b)(6) grounds. (*See* Mot. at 18–19.) At oral argument, however, counsel for the Government framed its challenge to this claim as an attack on subject matter jurisdiction under Rule 12(b)(1). Although courts typically view the overbreadth doctrine as relaxing prudential limits on standing, *see United States v. Elcom Ltd.*, 203 F.Supp.2d 1111, 1132 (N.D. Cal. 2002), that view of the doctrine is inapplicable where, as here, the plaintiff asserts an

overbreadth challenge to a statute that has also been applied to the plaintiff, *see, e.g., Fox*, 492 U.S. at 484, 109 S.Ct. 3028. In addition, courts generally evaluate a challenge to prudential standing under Rule 12(b)(6). *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004); *Elizabeth Retail Props., LLC v. KeyBank Nat'l Ass'n*, 83 F.Supp.3d 972, 985–86 (D. Or. 2015) ("While constitutional standing is evaluated under Rule 12(b)(1), prudential standing is evaluated under 12(b)(6).").

■■■ "The First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding standards for facial challenges." *Virginia v. Hicks*, 539 U.S. 113, 118, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). Generally, "[i]n a facial challenge on overbreadth grounds, the challenger contends that the statute at issue is invalid because it is so broadly written that it infringes unacceptably on the First Amendment rights of third parties." *Elcom*, 203 F.Supp.2d at 1132. However, the overbreadth doctrine may "be invoked in the unusual situation ... where the plaintiff has standing to challenge all the applications of the statute he contends are unlawful, but his challenge to some of them ... will fail unless the doctrine of overbreadth is invoked." [9] *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (emphasis omitted). As the Ninth Circuit has pointed out, "[t]echnically, the overbreadth doctrine does not apply if the parties challenging the statute engage in the allegedly protected expression[, but this technicality] does not mean that plaintiffs cannot challenge an ordinance on its face ... if the ordinance restricts their own constitutionally protected conduct." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997). "[T]hus, whether the 'overbreadth doctrine' applies to [a plaintiff's] First Amendment challenge is more of a technical academic point than a practical concern." *Id.* In any event, "[i]t is not the usual judicial practice ... to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied." *Fox*, 492 U.S. at 484–85, 109 S.Ct. 3028. Accordingly, "the lawfulness of the particular application of the law should ordinarily be decided first." [10] *Id.* at 485, 109 S.Ct. 3028.

■■■ "For a statute to be facially invalid on overbreadth grounds, it must be substantially overbroad." *Acosta v. City of Costa Mesa*, 694 F.3d 960, 970 (9th Cir. 2012). "A statute is substantially overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's legitimate sweep." *United States v. Perelman*, 695 F.3d 866, 870 (9th Cir. 2012) (internal quotation marks omitted). "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).

■■■ The court rejects the Government's argument that Microsoft may not proceed with an overbreadth challenge.

9. Microsoft states in its response to the Government's motion to dismiss that it "has third-party standing to assert the First Amendment rights of its customers, who receive no notice and therefore cannot exercise their own First Amendment rights to speak out about government scrutiny." (Resp. at 19 n.7.) However, besides asserting an overbreadth challenge and the public's right to access warrant information, Microsoft does not allege that it has third-party standing to assert its customers' First Amendment rights and makes no substantive argument on these points. (*See* FAC; Resp.)

10. An as-applied challenge "contends that the law is unconstitutional as applied to the liti-

gant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). "A paradigmatic as-applied attack ... challenges only one of the rules in a statute, a subset of the statute's applications, or the application of the statute to a specific factual circumstance, under the assumption that a court can 'separate valid from invalid subrules or applications.' " *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (quoting Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1334 (2000)). "[T]he substantive legal tests used in the two challenges are invariant." *Id.* (internal quotation marks omitted).

Although a plaintiff generally brings an overbreadth challenge to assert that a law violates the First Amendment rights of parties that are not before the court, a plaintiff may nevertheless assert an overbreadth challenge to a law that the plaintiff contends also violates its own First Amendment rights.[11] *See Fox*, 492 U.S. at 484, 109 S.Ct. 3028; *Nunez*, 114 F.3d at 949. In addition, Microsoft alleges that "a substantial number" of Section 2705(b)'s applications are unconstitutional compared to Section 2705(b)'s "legitimate sweep." *See Perelman*, 695 F.3d at 870; (FAC ¶¶ 23, 27–31.) Specifically, Microsoft alleges that Section 2705(b)'s "overbreadth manifests itself in at least three ways": (1) by permitting nondisclosure orders "for such period as the court deems appropriate"; (2) by permitting a court to issue a nondisclosure order when the court has "reason to believe" notification would result in one of five outcomes listed in Section 2705(b); and (3) by allowing a court to issue a nondisclosure order when

notification to the target would "otherwise seriously jeopardiz[e] an investigation or unduly delay[ ] a trial." (FAC ¶¶ 27–31.) Contrary to the Government's characterization, these allegations adequately support Microsoft's claim that Section 2705(b) is unconstitutionally overbroad.[12]

### c. Other First Amendment Theories

The Government also argues that Microsoft's "other possible First Amendment legal theories" fail. (MOT. at 24.) Specifically, the Government contends that "Microsoft may challenge the continued need for secrecy at any time" and "lacks standing to raise the claims of" third parties (*id.*), that Section 2705(b)'s "reason to believe" standard is sufficient (*id.*), and that Section 2705(b) is constitutional because the Government has sufficiently important interests in avoiding the list of harms under which the Government can seek a nondisclosure order (*id.* at 25).

The court rejects the Government's ancillary arguments. First, although Micro-

---

11. Further, Microsoft contends that indefinite nondisclosure orders under Section 2705(b) impinge on the public's right of access to court documents. (*See* FAC ¶ 26 (stating that orders issued under 2705(b) "improperly inhibit the public's right of access to search warrants under both the common law and the First Amendment").) Thus, as to at least one of the First Amendment rights Microsoft asserts, Microsoft alleges that Section 2705(b) is "so broadly written that it infringes unacceptably on the First Amendment rights of third parties." *Elcom Ltd.*, 203 F.Supp.2d at 1132; *see also Times Mirror Co.*, 873 F.2d at 1217 (holding that there is no First Amendment right of public access to warrant materials before an indictment issues); *Custer Battlefield Museum & Store*, 658 F.3d at 1194–95 (stating that the court "expressly reserved" the issue of "whether the public has a constitutional right of access after an investigation has been terminated").

12. At this stage of the litigation, Microsoft need not present evidence of unconstitutional applications of Section 2705(b)—it must only

allege "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (stating on review of a district court's grant of summary judgment that "[t]he party challenging the law need not necessarily introduce admissible evidence of overbreadth, but generally must at least 'describe the instances of arguable overbreadth of the contested law'" (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008))); *Martinez v. City of Rio Rancho*, 197 F.Supp.3d 1294, 1311 (D. N.M. 2016) ("The plaintiff bears the burden of demonstrating substantial overbreadth exists from the text of the statute and the facts of the case.").

Further, because the court is not deciding the constitutionality of Section 2705(b) as-applied to Microsoft, it is of no moment that the court ordinarily decides an as-applied challenge before deciding an overbreadth challenge. (*See* FAC ¶ 32); *Serafine v. Branaman*, 810 F.3d 354, 364 (5th Cir. 2016).

soft may challenge whether any given order should subject Microsoft to continued secrecy, that ability does not prevent Microsoft from bringing a constitutional challenge to the statute under which the orders may be issued. *See, e.g., In re Sealing*, 562 F. Supp. 2d at 878, 881 (concluding that indefinite nondisclosure orders under 2705(b) may be unconstitutional); *[Redacted]@yahoo.com*, 79 F.Supp.3d 1091 (same). Further, Microsoft has standing to assert its First Amendment claims because Microsoft alleges that it has suffered a First Amendment injury and will likely suffer similar injuries in the future. *See supra* § III.B.1.a. Microsoft therefore need not show third-party standing as to its First Amendment claim. Finally, the Government's arguments that the "reason to believe" standard that Microsoft contends is unconstitutional and that it has compelling interests sufficient to justify indefinite nondisclosure orders under Section 2705(b) are not properly before the court at this stage of litigation. For these reasons, the court rejects Microsoft's ancillary arguments to dismiss Microsoft's First Amendment claims.

#### 4. As–Applied Challenge

The Government's final argument against Microsoft's First Amendment claim assails Microsoft's as-applied challenge on the basis that Microsoft has not pleaded sufficiently particular facts to support such a challenge. (Mot. at 28–29.) Specifically, the Government asserts that "Microsoft has not provided specific facts about any instance of the application of [S]ections 2703 and 2705(b) in support of its claims 'as applied to Microsoft' " and "provides no information about any particular instance or order." (*Id.* at 29.) Microsoft counters that "[t]he distinction between facial and as-applied challenges 'goes to the breadth of the remedy employed by the [c]ourt, not what must be

pleaded in a complaint.' " (Resp. at 25 (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010)).)

A plaintiff asserting an as-applied challenge must allege sufficient facts to demonstrate a statute's "unconstitutionality as applied to [the plaintiff's] activities." *Pickup v. Brown*, No. 2:12-cv-02497-KJM-EFB, 2016 WL 4192406, at *4 (E.D. Cal. Aug. 9, 2016). "[A]n as-applied challenge requires an allegation that a law is unconstitutional as applied to a particular plaintiff's speech activity, even though it may be valid as applied to others." *Venice Justice Comm. v. City of L.A.*, 205 F.Supp.3d 1116, 1122 (C.D. Cal. 2016).

Although the Government is correct that " '[a]n as-applied challenge goes to the nature of the application rather than the nature of the law itself' " (Mot. at 29 (quoting *Desert Outdoor Advert. v. Oakland*, 506 F.3d 798, 805 (9th Cir. 2007))), that observation does not warrant dismissal of Microsoft's as-applied challenge. Microsoft alleges in its complaint that Section 2705(b) has been unconstitutionally applied to Microsoft because in a 20–month period ending in May 2016, courts have issued more than 450 indefinite nondisclosure orders accompanying a warrant. (FAC ¶ 32.) Each order allegedly prevents Microsoft from speaking about the government investigations it is required to participate in. (*Id.*) In addition, Microsoft alleges that all of those orders were issued under Section 2705(b)'s "reason to believe standard," which Microsoft contends does not meet strict scrutiny, and that "it appears that a substantial number of the orders may have relied on the … catchcall provision" that Microsoft also asserts is unconstitutional. (*Id.* ¶¶ 29, 32.) The court finds that Microsoft has sufficiently stated an as-applied challenge because Microsoft alleges that Section 2705(b) has been unconstitutionally applied to Microsoft's speech with acts

that—taken as true—support a plausible claim for relief.

## C. Fourth Amendment Claim

The Government argues that the court must dismiss Microsoft's Fourth Amendment claims because Microsoft cannot assert the Fourth Amendment rights of its users.[13] (Mot. at 14.) Specifically, the Government contends that Fourth Amendment rights are personal rights that a third party cannot assert. (*Id.*) Microsoft counters by stating that it meets the test for third-party standing developed in *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991),[14] which Microsoft contends allows third-party standing "where the absent party is hindered from protecting its Fourth Amendment interests." (Resp. at 28 n.13.) Because Microsoft addressed the Government's argument only in a footnote, the court invited the parties to file supplemental briefing on this particular issue in advance of oral argument. (*See* 1/19/17 Order (Dkt. # 103); Msft. Supp. Br. (Dkt. # 104).)

In its supplemental brief, Microsoft concedes that two Supreme Court cases, *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), establish a general rule against a third party vicariously asserting the Fourth Amendment rights of another person, but Microsoft argues that this general rule yields in "special circumstances," such as where a person cannot assert his own Fourth Amendment rights.[15] (Msft. Supp. Br. at 3.) Microsoft argues that even in the context of the Fourth Amendment, third-party standing jurisprudence allows a plaintiff to bring suit on another person's behalf where the person could not " 'effectively vindicate[ ]' " his rights " 'except through an appropriate representative before the Court.' " (*Id.* at 6) (quoting *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).) Microsoft contends that *Alderman* explicitly contemplates this outcome because in that case, the Court con-

---

**13.** The Government frames this issue as one of standing. (Mot. at 14 ("Microsoft's inability to bring a claim on behalf of its users is properly viewed as an absence of the personal injury requirement for Article III standing.").) However, the Supreme Court has held that "definition of [Fourth Amendment] rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) ("Central to our analysis was the idea that in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." (internal quotation marks omitted)). On the other hand, the Ninth Circuit continues to refer to the analysis as addressing standing. *See, e.g., Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998) ("Re-

gardless of whether Appellants have standing to assert a Fourth Amendment claim based on Douglas's death, they each may assert a Fourteenth Amendment claim based on the related deprivation of their liberty interest arising out of their relationship with Douglas."); *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1248 (9th Cir. 1982) ("Ellwest has no standing to assert the [F]ourth [A]mendment rights of its customers."). Whether the analysis is viewed as one of substantive law or standing, however, does not impact the court's subsequent analysis.

**14.** In *Powers*, the Supreme Court held that a plaintiff has standing to vindicate violations of a third party's constitutional rights when the plaintiff demonstrates (1) an injury in fact, (2) a close relationship with the third party, and (3) a hindrance to the third party's ability to protect its own legal interests. 499 U.S. at 411, 111 S.Ct. 1364.

**15.** The Government did not file a supplemental brief. (*See* Dkt.)

cluded that no "special circumstances" warranted allowing the plaintiff to assert the Fourth Amendment rights of a party not before the Court. (*See id.* at 3–4.) Finally, Microsoft argues that "courts do conduct *Powers* analyses to determine whether litigants may bring claims based on infringement of others' Fourth Amendment rights." (*Id.* at 6.)

Having reviewed this area of Fourth Amendment law, the court concludes that the Supreme Court and the Ninth Circuit have routinely held in a variety of circumstances that a plaintiff may not assert the Fourth Amendment rights of another person. *See, e.g.*, *Alderman*, 394 U.S. at 174, 89 S.Ct. 961 (stating the "general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted"); *Rakas*, 439 U.S. at 134, 99 S.Ct. 421. In *Alderman*, the Supreme Court unequivocally stated that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." 394 U.S. at 174, 89 S.Ct. 961. Based on this principle, the Supreme Court concluded that a third party may not invoke the exclusionary rule "because it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Rakas*, 439 U.S. at 134, 99 S.Ct. 421; *see also United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) ("[T]he values of the Fourth Amendment are preserved by a rule which limits the availability of the exclusionary rule to defendants who have been subjected to a violation of their Fourth Amendment rights."). Specifically, the Supreme Court held that "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."

*Id.* at 134, 99 S.Ct. 421. In fashioning this rule, the Supreme Court noted that "[t]here is no reason to think that a party whose rights have been infringed will not, if evidence is used against him, have ample motivation to move to suppress it." *Id.*; *see also Alderman*, 394 U.S. at 174, 89 S.Ct. 961 ("None of the special circumstances which prompted *NAACP v. Alabama* ... and *Barrows v. Jackson* ... are present here."). For this reason, third parties cannot benefit from the exclusionary rule when the third party's Fourth Amendment rights have not been violated. *See id.*

Courts also apply this rule outside of the exclusionary rule context. For example, the Supreme Court and the Ninth Circuit have prevented plaintiffs in cases brought under 42 U.S.C. § 1983 from invoking another person's Fourth Amendment rights. In *Plumhoff v. Rickard*, the Supreme Court refused to allow the respondent, who was driving a car, to show that the number of shots fired in a police interaction was constitutionally excessive due to the presence of a passenger in the front seat. —— U.S. ——, 134 S.Ct. 2012, 2022, 188 L.Ed.2d 1056 (2014). The Court based its decision on the fact that "Fourth Amendment rights are personal rights which ... may not be vicariously asserted" and concluded that the passenger's "presence in the car [could not] enhance [the respondent's] Fourth Amendment rights." *Id.* The Ninth Circuit has also held that "the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (noting an exception to that general rule based on a statute that allowed "the survivors of an individual killed as a result of an officer's excessive use of force [to] assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action" (citing 42 U.S.C. § 1988(a))); *see also Mabe v. San*

*Bernardino Cty., Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1111 (9th Cir. 2001) (citing *United States v. Taketa,* 923 F.2d 665, 670 (9th Cir. 1991)) ("[The plaintiff] has no standing to claim a violation of [the plaintiff's daughter's] Fourth Amendment rights.").

As Microsoft points out, a "general rule" often has exceptions and courts have found "special circumstances" to give rise to third-party standing. (*See* Msft. Supp. Br. at 3–4); *Alderman,* 394 U.S. at 174, 89 S.Ct. 961. However, the Supreme Court and Ninth Circuit have also adhered to the principle that a third party may not sue to vindicate another person's Fourth Amendment rights in cases that did not involve the exclusionary rule or Section 1983. For example, in a case involving facts similar to those here, bank customers, a bank, and a bankers' association filed suit to challenge the constitutionality of the Bank Secrecy Act of 1970. *Cal. Bankers Ass'n v. Shultz,* 416 U.S. 21, 25, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974). "Under the Act, the Secretary of the Treasury [was] authorized to prescribe by regulation certain record-keeping and reporting requirements for banks and other financial institutions in the country" to combat "the unavailability of foreign and domestic bank records of customers thought to be engaged in activities entailing criminal or civil liability." *Id.* at 26, 94 S.Ct. 1494. Among other claims, the plaintiffs asserted a Fourth Amendment claim that the financial transaction details the Act required banks to give to the Government amounted to an unreasonable search. *Id.* at 64, 94 S.Ct. 1494. The Supreme Court did not allow "the California Bankers Association or the Security National Bank [to] vicariously assert such Fourth Amendment claims on behalf of bank customers in general." *Id.* at 69, 94 S.Ct. 1494.

The Ninth Circuit also held that a threat of "dragnet searches" and "spying" did not threaten a theater's privacy interests under the Fourth Amendment, but rather "the interests of its patrons." *Ellwest,* 681 F.2d at 1248. The Court held that because "Fourth [A]mendment rights are personal rights ... which may not be vicariously asserted," "Ellwest ha[d] no standing to assert the [F]ourth [A]mendment rights of its customers." *Id.* Other federal courts have reached similar conclusions. *See, e.g., Daniels v. Southfort,* 6 F.3d 482, 484 (7th Cir. 1993) (holding that the plaintiff "lacks standing to complain about injuries to his friends" because "Fourth Amendment rights cannot be asserted vicariously" in a case involving a Fourth Amendment challenge to Chicago Police Department harassment against the plaintiff and "his friends"); *Keller v. Finks,* No. 13-03117, 2014 WL 1283211, at *6 (C.D. Ill. Mar. 31, 2014) (citing *Salvucci,* 448 U.S. at 86–87, 100 S.Ct. 2547) (stating that "[t]he rule against third-party standing is especially strong in the context of the Fourth Amendment" and holding that "the rule against third-party standing in the context of the Fourth Amendment bars Plaintiff's claim"); *Haitian Refugee Ctr. v. Gracey,* 809 F.2d 794, 809 (D.C. Cir. 1987) (summarizing "[t]he Supreme Court's rejection of litigants' attempts to raise the [F]ourth [A]mendment rights of third parties"); *but see Heartland Acad. Cmty. Church v. Waddle,* 427 F.3d 525, 532–33 (8th Cir. 2005) (holding that a school had associational standing to assert the Fourth Amendment rights of its students and distinguishing this case from cases that involve the exclusionary rule). Taken together, these cases embody a particularly narrow view of third-party standing in the Fourth Amendment realm.[16]

---

**16.** The general policies behind prudential limits on standing further support this conclusion. The Supreme Court instructs that "[f]ederal courts must hesitate before resolving a

Microsoft argues that in all of these cases, the person to whom the Fourth Amendment right belonged could go to court to vindicate his own right, whereas Microsoft contends that its customers cannot do so here. (*See* Msft. Supp. Br. at 2–5.) On this basis, Microsoft encourages the court to apply the three-part *Powers* test and conclude that it has standing to pursue these Fourth Amendment claims. (*Id.* at 5–6); *see also supra* n.18. Specifically, Microsoft contends that this case involves "special circumstances" similar to those present in *N.A.A.C.P.* and *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). (*Id.* at 6.) In those cases, the Supreme Court allowed an organization to assert its members' rights and white property owners to assert the Fourteenth Amendment rights of property owners of color. *See N.A.A.C.P.*, 357 U.S. at 459, 78 S.Ct. 1163 (allowing the N.A.A.C.P. associational standing to assert the constitutional rights of its members to resist an order that required the N.A.A.C.P. to release its membership list); *Barrows*, 346 U.S. at 255, 73 S.Ct. 1031 (allowing white residents standing to assert the constitutional rights of other people to invalidate a racially discriminatory restrictive covenant).

In addition, Microsoft cites four cases in which federal courts applied the *Powers* test to determine whether a plaintiff had third-party standing to assert a Fourth Amendment claim. (*See* Msft. Supp. Br. at 6); *DeRaffele v. City of Williamsport*, No. 4:14-cv-01849, 2015 WL 5781409, at *7 (M.D. Pa. Aug. 19, 2015) (applying the *Powers* test and concluding that the plaintiff lacked standing to assert his tenants' First, Fourth, Fifth, and Fourteenth Amendment rights because "he ha[d] not

shown that the tenants face[d] a substantial obstacle to asserting their own rights and interests"); *Al–Aulaqi v. Obama*, 727 F.Supp.2d 1, 24 (D.D.C. 2010) (applying *Powers* to a Fourth Amendment claim and concluding that the plaintiff could not "show that a parent suffers an injury in fact if his adult child is threatened with a future extrajudicial killing"); *Franklin v. Borough of Carteret Police Dep't*, No. 10-1467 (JLL), 2010 WL 4746740, at *4 (D.N.J. Nov. 15, 2010) (applying *Powers* to a Fourth Amendment claim and determining that the plaintiff had third-party standing); *Daly v. Morgenthau*, No. 98 CIV. 3299(LMM), 1998 WL 851611, at *4 (S.D.N.Y. Dec. 9, 1998) (citing both *Rakas* and *Powers* and finding that "there is no indication that" the person not before the court was "hindered in her ability to protect her own interests"). These cases are not binding on the court. Moreover, the court finds them unpersuasive in light of the Supreme Court's and the Ninth Circuit's broad language and the wide range of applications in which those Courts have applied the principle against third-party standing in the Fourth Amendment context. Indeed, the cases Microsoft cites do not directly address the Supreme Court and Ninth Circuit case law that the court examines above.

■■■■ Based on the foregoing analysis, the court concludes that Microsoft may not bring a claim to vindicate its customers' Fourth Amendment rights. Although the Supreme Court and the Ninth Circuit routinely employ the third-party standing doctrine to cases involving constitutional rights, that doctrine is in tension with Fourth Amendment jurisprudence. Indeed,

---

controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation." *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). The

Supreme Court cautions courts not to "adjudicate such rights unnecessarily" and indicates that "third parties themselves usually will be the best proponents of their own rights." *Id.* at 113–14, 96 S.Ct. 2868.

the court has identified only one non-binding case in which a court has employed the *Powers* test to allow third-party standing when the party bringing suit seeks to vindicate another person's Fourth Amendment rights. *See Franklin*, 2010 WL 4746740, at *3–4 (holding that a parent had standing to bring an excessive force claim on the parent's minor child's behalf). On the other hand, the court has not identified any binding case law or compelling rationale to limit the Supreme Court's and Ninth Circuit's general holdings that Fourth Amendment rights are personal rights to cases involving the exclusionary rule or to Section 1983 suits.

 The court acknowledges the difficult situation this doctrine creates for customers subject to government searches and seizures under Sections 2703 and 2705(b). As Microsoft alleges, the indefinite nondisclosure orders allowed under Section 2705(b) mean that some customers may never know that the government has obtained information in which those customers have a reasonable expectation of privacy. (FAC ¶¶ 7 ("Section 2703 allows the government to search and seize customers' private information without providing any notice to the customer, while Section 2705(b) permits the government to obtain an order gagging the cloud services provider based upon a constitutionally insufficient showing."), 35 ("The interaction of these provisions means the government can access a customer's most sensitive information without the customer having any way to learn about, or challenge, the government's intrusion.").) For this reason,

some of Microsoft's customers will be practically unable to vindicate their own Fourth Amendment rights. (*Id.* ¶ 38 ("[C]ustomers lack sufficient knowledge to challenge government action because of the government's tactic of operating behind a veil of secrecy.")); *see also Reforming ECPA's Secret Docket* at 328 ("[T]he suppression remedy is no consolation to the law-abiding citizen who is never charged with a crime and who never learns, even after the fact, that her emails and phone records have been obtained and reviewed by the government."). This conundrum, however, is not unique to this case; it is also true of the victim of an unreasonable search in a stranger's home. *See Alderman*, 394 U.S. at 174, 89 S.Ct. 961. The source of the court's conclusion is thus the product of established and binding precedent, which precludes the court from allowing Microsoft to vindicate Fourth Amendment rights that belong to its customers. This court cannot faithfully reconcile the broad language of those cases and Microsoft's theory of Fourth Amendment standing on the facts of this case; that task is more properly left to higher courts.[17]

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the Government's motion to dismiss (Dkt. # 38).

---

**17.** A court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court need not grant leave to amend where amendment would be futile. *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). A proposed amendment is futile if it would not state a "cognizable legal theory" or "sufficient facts." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

(9th Cir. 1990). Because of the binding authority regarding third-party standing in the Fourth Amendment context, which the court addressed in detail *supra*, the court concludes that any amendment of Microsoft's Fourth Amendment claim on behalf of its customers would be futile. For this reason, the court declines to grant Microsoft leave to amend this claim.